JANESVILLE WATER COMPANY, Appellant, vs. CITY OF JANES-
VILLE and others, Respondents.

*March 21—April 9, 1914.*

*Public utilities: Purchase of waterworks by city: Election: Form of
question submitted: Notice: Insufficiency: Invalidation of vote.*

1. At an election to determine whether a city should purchase an
    existing waterworks plant, the fact that the question in form
    submitted was "Shall the city of Janesville purchase the Janes-
    ville Water Company?" did not mislead the voters or invali-
    date the election.
2. Where, under sec. 926—31, Stats. 1911, and the city charter, ten
    days' notice must be given of an election upon the question of
    the acquisition of a public utility by the city, but the first

publication was on Sunday, nine days before the election, the notice was insufficient, even assuming that a publication on Sunday was valid; and such insufficiency in this case invalidated the election, there having been but a small majority in favor of acquiring the utility and it not satisfactorily appearing that the voters had adequate time to investigate, consider, and discuss the subject voted upon.

3. The rule that a vote to fill offices at a general election is not invalidated by insufficient election notice where it appears that the electors, by reason of the existence of general laws, knew of the election and of the offices to be filled in time to enable them to express their choice, does not apply to special elections or to special questions submitted at a general election, there being no presumption that the voters knew of those matters.

APPEAL from an order of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

Plaintiff began a suit in equity to restrain the defendants from prosecuting a proceeding pending before the railroad commission of Wisconsin for the valuation of plaintiff's waterworks under the Public Utility Law of this state and for a purchase by the defendant city of said waterworks. A temporary injunction was secured from a court commissioner, which the circuit court for Rock county dissolved after a hearing before it. This is an appeal by plaintiff from the order dissolving the temporary injunction.

For the appellant there was a brief by *Jeffris, Mouat, Oestreich & Avery,* and oral argument by *M. G. Jeffris* and *O. E. Oestreich.*

*W. H. Dougherty,* city attorney, for the respondents.

VINJE, J. At the election held in the city of *Janesville* April 2, 1912, there was submitted to the voters, pursuant to directions of the common council, the question: Shall the city of *Janesville* purchase the *Janesville Water Company?* The total number of votes cast upon the subject was 2,279, of which 1,238 were cast for and 1,041 against the question, the majority in favor of purchase being 197.

Claim is made that the question was so worded as to mis-

lead the voters. It is true the question is inapt and does not accurately express the matter intended to be submitted, namely, Shall the city of *Janesville* purchase the plant or waterworks system of the *Janesville Water Company?* but in our judgment no voter was misled by the form of the question. Every voter must have understood that it was the purchase of the plant or physical property of the *Janesville Water Company* that was intended and not the purchase of the corporation mentioned. *Janes v. Racine,* 155 Wis. 1, 143 N. W. 707; *State ex rel. Elliott v. Kelly,* 154 Wis. 482, 143 N. W. 153.

The first official notice that such a question would be submitted to the voters was published on Sunday, March 24th, nine days before the election. It is claimed by plaintiff that the notice was insufficient.

Sec. 1797m—80, Stats., inferentially at least, provides that the electors of a municipality may at a general or special election vote upon the question of the acquisition of a public utility. It makes no provision for giving notice of such election. But sec. 926—31, Stats. 1911, provides that when any question is to be submitted to the voters of any city or village the common council of such city or the village board of such village shall issue a call for such election in accordance with the law authorizing such submission. Unless otherwise provided by such law, notice of such election shall be given, and the election shall be held and conducted by the inspectors and clerks of election in the same manner, and the return thereof shall be made in the same form and manner, as in the case of general municipal elections. Since the general Public Utility Law makes no provision for giving notice of election, such notice must, under sec. 926—31, be given as required for a general municipal election in *Janesville.* Sec. 1 of ch. II of the charter of that city [ch. 221, Laws of 1882] requires ten days' notice to be given for a general municipal election therein. So ten days was the notice required for the submission of the question voted upon. Assuming that the first pub-

lication on Sunday was valid, it would still leave the notice insufficient.

The question arises, Does such insufficiency of the election notice invalidate the vote cast? Many cases are called to our attention to the effect that a failure to give the full statutory election notice does not invalidate the election, and among others, *State ex rel. Peacock v. Orvis*, 20 Wis. 235; *State ex rel. Lutfring v. Gœtze*, 22 Wis. 363; and *State ex rel. Chase v. McKinney*, 25 Wis. 416, in which the court held that, as to filling offices at a general election, an insufficiency of the election notice would not invalidate the votes cast where it appeared that the voters had an opportunity to cast their ballots, because the time of holding general elections is fixed by law and it is generally known that offices are to be filled by vote at such elections.

In the last case mentioned the election was declared void because it was not generally known that a vacancy was to be filled. But decisions as to the validity of general elections, especially where challenged by one who participated therein, are of little value in determining the precise question before us. It is undoubtedly the rule in this state, as well as in most states, that a vote to fill offices at general elections is not invalidated by an insufficient election notice where it appears that the electors, by reason of the existence of general laws, knew of the election and of the offices to be filled in time to enable them to express their choice. Such a rule cannot be applied to special elections or to special questions submitted at a general election, for there is no presumption that the voters knew anything about either, there being no general law to apprise them of the fact.

Moreover, so far as the question here considered is concerned, it is not enough to show that the electors knew that a vote was to be taken upon it in time to go to the polls and cast their ballots. The question, in order to be voted upon intelligently and understandingly, required the collection and consideration of many important data and facts concerning the

advisability of the city owning and running such a public utility as was contemplated to be purchased. The required statutory notice of ten days was given not only for the purpose of enabling voters to go to the polls on election day, but also to apprise them of the question to be voted upon in time to permit them to make such inquiries and investigations upon the subject as they might desire, as well as time for consideration and discussion thereof. An intelligent vote upon this question requires a more or less general knowledge of facts usually not well known, relating not only to the rates charged but to the cost of giving the service, as well as a consideration of the probability of the municipality managing such a plant so as to give cheaper or better service than the private concern would under the supervision of the railroad commission. The statute permits ten days. Can the court shorten the period? If so, can it say the voters of *Janesville* did not require ten days for a consideration of the matter, and were not entitled to a ten days' campaign upon the subject? To do so would be to substitute our judgment for the legislative judgment as to the length of notice that should be given. There can be here no room for construction. The requirement of a ten days' notice is plain and unambiguous and capable of exact measurement. When the facts are known, no judgment or discretion need be applied in order to ascertain whether or not the exact statutory requirement has been complied with. So the case could be rested upon the plain language of the statute, as was done in the case of *Hubbard v. Williamstown,* 61 Wis. 397, 21 N. W. 295, where it was held that a fourteen-day notice of a special town meeting invalidated the proceedings thereof, the statute requiring a fifteen-day notice. We prefer, however, to rest it upon the ground that in our judgment, under the facts in the case, the statutory purpose of giving notice has not been met. It does not satisfactorily appear that the voters had adequate time in which to consider and discuss the subject voted upon. Since the first publication was on a Sunday, only eight days after the commence-

ment of a secular day remained for investigation, discussion, and consideration—a substantial shortening of the statutory period.    In view of the fact that out of a total vote of 2,279 there was a majority of only 197 in favor of purchase, we cannot say that the result might not have been different had the statutory notice been given—not because the voters did not have an opportunity to vote for lack of timely notice, but because a number sufficient to change the result might have come to a different conclusion had two days more been given the electors in which to consider and discuss the matter.

It is claimed that the discussions in the public press of the city of *Janesville* adequately advised the voters of the fact that the question of the purchase of the waterworks was to be voted upon at the coming spring election.    A reference to the exhibits appended to the affidavit of *Mr. Dougherty,* which exhibits purport to give all the items published in the papers of the city respecting this subject, discloses the fact that on October 17, 1911, the Janesville Daily Gazette informed the voters that the council had taken action looking towards submitting the purchase of the waterworks to the voters at a special election to be held for that purpose.    On October 31, 1911, the Janesville Daily Gazette contained an item to the effect that the council had the previous evening unanimously passed a resolution directing the city clerk to submit the question of the purchase of the waterworks by the city at the next spring election.    On the 18th, 20th, and 21st of October this same paper contained items discussing the advisability or nonadvisability of the city purchasing the waterworks.    It also contained similar items on November 9 and 15, 1911, and December 27, 1911.    On October 17, 1911, the Janesville Daily Recorder contained an item stating that the purchase by the city of the waterworks would be submitted to the voters at a special election.    The exhibits fail to show that either of these two papers, or any others, at any time between December 27, 1911, and March 25, 1912, contained any publication with reference to the question of submitting the pur-

chase of the waterworks to a vote either at a special election or at the spring election. The latter date was after the first official notice had been published and not ten days previous to the time of the election. It is true that from October 17th and running through the remainder of October and the months of November and December, and as late as January 3, 1912, there were contained in both papers a number of items relating to the question of changing to a commission form of government and to the advisability, generally, of municipalities owning public utilities. The article of January 3, 1912, appearing in the Janesville Daily Gazette began: "We hear but little said about municipal ownership of public utilities these days," showing the discussions had about ceased. References are also made in the papers up to January 3, 1912, to discussions held in the Y. M. C. A. rooms and by the Twilight and Union clubs of the city. These items, however, were of a general nature and did not inform the voters that an election would be held on the 2d of April to determine the question submitted. No such information was given to the voters from December 27, 1911, until the publication of the official notice March 24, 1912, and no reference to the subject of the purchase of the waterworks, or of public ownership, or municipal ownership of public utilities, seems to have been contained in either paper from January 3 to March 25, 1912. In view of the fact that some of the newspaper items appearing in the fall of 1911 declared that the question would be submitted at a special election, and some declared that it would be submitted at the coming spring election, and in view of the fact that no definite information relative thereto, so far as we can ascertain from the exhibits on file, was contained in either of these papers after December 27, 1911, it cannot be said that the voters were adequately informed by the public press that the question of the purchase of the waterworks was to be voted upon at the spring election of 1912.

The cases on the subject are far from harmonious, either as relating to special elections or general elections, or to the

submission of special questions at general elections. They all agree in saying that the legislative purpose should be carried out, and when it is, the statute is substantially complied with, although there may be a slight variance from the statutory notice. The difficulty arises in determining when the legislative purpose is met, and different conclusions as to that seem to be drawn by different courts from apparently similar facts.

In the case of *Bauer v. Township Board,* 157 Mich. 395, 122 N. W. 121, much relied upon by respondents, the court held that a failure to give the full statutory notice did not invalidate an election upon the question of prohibition. But it said the electors were as well informed of the time, place, and manner of the election *and of the issue involved* as they would have been if the first publication had been four days earlier. "Probably no issue before the people," it adds, "was ever more fully discussed and more thoroughly understood by the electors." Moreover, it appeared that a majority of all the qualified voters in the county voted in the affirmative. So the case was one where the facts showed that the statutory purpose of notice was fully met and that the result could not have been otherwise. So, also, in the case of *Grove v. Haskell,* 24 Okla. 707, 104 Pac. 56, cited by counsel for respondents as a leading case, the court held that in the absence of a showing that the failure to post or publish notices as required had any effect on the result of the election or deprived any voter of an opportunity to vote, the election would not be declared invalid at the suit of one who participated therein.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.