16]          JANUARY TERM, 1917.          545

State ex rel. Kleist v. Donald, 164 Wis. 545.

STATE EX REL. KLEIST vs. DONALD, Secretary of State.

*October 28, 1916—January 16, 1917.*

*Constitutional law: Courts: Removal of circuit judges: Shortening term: Power of legislature: Invalid statute: Presumptions: Knowledge of law: Elections: Validity: Failure to give notice, etc.: Official ballots: Mandamus to compel issuance of certificate of election: Parties.*

1. In view of sec. 13, art. VII, Const. (prescribing the method by which a circuit judge may be removed), and sec. 6, art. VII (providing that no alteration of the boundaries of a circuit shall have the effect to remove a judge from office), the power of the legislature under sec. 7, art. VII, to fix the term of office of circuit judges cannot be so exercised as to have the effect of removing a circuit judge from office. Ch. 6, Laws 1915, shortening by one year the term of one of the judges for the Second circuit, was therefore void.

2. The fact that such judge voluntarily submitted himself as a candidate at an election held pursuant to said ch. 6, Laws 1915, was not an effective consent to the shortening of his term, a public right being involved which could not be affected in that way.

3. There is no presumption that every person knows the law as a fact. A better statement of the rule is that ignorance of the law affords no excuse for its violation.

4. An unconstitutional act of the legislature is not a law; it confers no rights, it imposes no penalties, it affords no protection, it is not operative, and in legal contemplation it has no existence.

5. Where there is in fact an election at the time and place designated by law, such election is valid although the statutory notice was not given.

6. Where the failure to comply with the law results in a few only out of a large number of electors exercising the right to vote at the time and place designated by law, there is no election.

7. The proper officers, acting in good faith in accordance with a void statute, refused to give notice of an election and there was no compliance in any respect with the laws relating to official ballots and their use. The relator, without seeking judicial relief to compel said officers to perform their duty, gave extensive notice through various publications that he was a candidate and solicited votes at an election to be held at the time fixed by law. The electors generally believed that no election was to be held, and comparatively few voted, casting their ballots for the relator, there being no other candidate. *Held*, that there was no

election. *State ex rel. Peacock v. Orvis*, 20 Wis. 235, and other cases, distinguished.

8. The statutes regulating elections, and especially the provisions relating to official ballots, are assumed to be reasonable and constitutional.

9. Where the judgment in a *mandamus* proceeding to compel the issuance of a certificate of election to the relator neither diminishes nor enlarges the rights of the incumbent of the office, the failure to make him a party is immaterial.

Mandamus brought by the relator in this court upon leave granted, the attorney general having declined to prosecute the action in his own name.

It appears from the petition that ch. 474, Laws 1909, provided for an additional judge for the Second circuit (Milwaukee county), his term to begin May 1, 1910, and to expire on the day preceding the first Monday in January, 1917, and an incumbent was elected in April, 1910. Ch. 474 was incorporated in the revised statutes as part of sec. 113.01. Ch. 6 of the Laws of 1915 amended that section by changing the date of the commencement of the term of said judge from the first Monday in January, 1917, to the first Monday in January, 1916, thereby shortening the term one year. After the amendment of the law an election to be held in April, 1915, was regularly called, noticed, and advertised as provided by law. The first incumbent was chosen to succeed himself and qualified and entered upon his duties on the first Monday in January, 1916.

Relator, claiming that the act shortening the term from January, 1917, to January, 1916, was unconstitutional and void, attempted to become a candidate at the election held April 4, 1916, for the term to begin on the first Monday in January, 1917, that being the date of the expiration of the term as originally fixed by ch. 474 of the Laws of 1909. The secretary of state gave no notice of an election for such office. On March 24th relator demanded that such notice be given, but the secretary of state refused to give any notice of an election for circuit court judge for branch No. 6, or of the

candidacy of the relator, and no official notice of the holding of an election for said office was given by any one.    Thereupon the relator caused notice to be given by publication of the following advertisement in practically all of the leading papers of general circulation published in Milwaukee county:

"JOHN C. KLEIST
(of Whitefish Bay, Milwaukee county, state of Wisconsin) announces that he is a Non-Partisan candidate for the office of circuit judge, branch No. 6, of the Second judicial circuit, in Milwaukee county, state of Wisconsin, to succeed Hon. Franz C. Eschweiler, for the full term beginning on the first Monday in January, 1917, and ending the day preceding the first Monday in January, 1923, and solicits the suffrage and votes of all qualified electors and voters of Milwaukee county aforesaid at the judicial election to be held in said Milwaukee county on April 4, 1916, and requests that the voters write his name and title of office on blank space at the bottom of the official judicial ballot, or make a cross in the square opposite his name on 'sticker' to be pasted at bottom of said ballot as follows:

For Circuit Judge
Branch No. 6,
To succeed F. C. Eschweiler,
John C. Kleist.

"P. S.    Cut this out and take with you to booth for assistance in voting."

The advertisement was also translated and published in the German and Polish papers.    Relator also caused 80,000 handbills to be distributed bearing the advertisement.    It does not appear that he circulated or filed any nomination papers as required by law.

It further appears that at the election held April 4, 1916, there being no other candidate for the office of circuit judge for branch No. 6, 3,000 votes were cast for the relator, of which but 1,470 were canvassed and returned by the election officers.    While the fact is not stated, the total number of votes cast in Milwaukee county for the several candidates for justice of the supreme court in April, 1916, was 62,053.

There was no place upon the official ballot indicating that any one was to be voted for for circuit judge of branch No. 6, Second circuit, and, so far as the facts appear from the petition, such voting was done by attaching a paster to the official ballot in the following form:

"For Circuit Judge
Branch No. 6
JOHN C. KLEIST....☐
To Succeed F. C. Eschweiler,
A Nonpartisan Judiciary."

It further appears that return was made of the votes so cast to the secretary of state, who refused to issue a certificate of election to relator, and thereupon the relator brought this proceeding to compel the issue of a certificate of election by the secretary of state. Further facts appearing in the petition will be stated in the opinion. The defendant appeared and moved to quash the alternative writ of *mandamus* granted upon the petition, for the reason that neither the petition nor the alternative writ states facts showing that relator is entitled to the writ prayed for.

*Henry S. Sloan,* attorney, and *Walter D. Corrigan* and *Charles E. Pierce,* of counsel, for the plaintiff.

For the defendant there was a brief by the *Attorney General* and *E. E. Brossard,* assistant attorney general, and oral argument by *Mr. Brossard.*

ROSENBERRY, J.    Two questions are presented by the record in this case:

(1) Is ch. 6 of the Laws of 1915, amending sec. 113.01, Stats., by which the term of office of the circuit judge of branch 6 of the Second circuit is shortened so as to expire on the day preceding the first Monday in January, 1916, instead of on the day preceding the first Monday in January, 1917, a valid enactment?

(2) If ch. 6 of the Laws of 1915 is void, was the relator elected at the election held April 4, 1916, as circuit judge for branch No. 6 of the Second circuit?

Relator contends that ch. 6 of the Laws of 1915 is void for two reasons: (a) It shortens the term of office of a circuit judge.    (b) It is a local law and its purpose is not expressed in its title.

In our view of the case we need discuss the first reason only.    Prior to April, 1897, sec. 7 of art. VII of the constitution of this state was as follows:

"For each circuit there shall be a judge chosen by the qualified electors therein, who shall hold his office as is provided in this constitution, and until his successor shall be chosen and qualified; and after he shall have been elected, he shall reside in the circuit for which he was elected.    One of said judges shall be designated as chief justice in such manner as the legislature shall provide.    And the legislature shall at its first session provide by law as well for the election of, as for classifying, the judges of the circuit court to be elected under this constitution, in such manner that one of said judges shall go out of office in two years, one in three years, one in four years, one in five years and one in six years, and thereafter the judge elected to fill the office shall hold the same for six years."

Under this provision of the constitution there was considerable doubt as to whether the legislature had power to provide an additional judge for the Second circuit, and in 1897 sec. 7 was amended to read as follows:

"For each circuit there shall be chosen by the qualified electors thereof one circuit judge, except that in any circuit composed of one county only, which county shall contain a population, according to the last state or United States census, of one hundred thousand inhabitants or over, the legislature may, from time to time, authorize additional circuit judges to be chosen.    Every circuit judge shall reside in the circuit from which he is elected, and shall hold his office for such

term and receive such compensation as the legislature shall prescribe."

Laws were enacted providing for additional judges for the Second circuit from time to time, and ch. 474, Laws 1909, was an act which provided for one of the additional judges, who thereafter (ch. 592, Laws 1913) was designated as circuit court judge for branch No. 6 of the Second circuit.

The legislature being of the opinion that it could, under sec. 7 of art. VII as amended, shorten the term of office of a circuit judge, enacted ch. 6 of the Laws of 1915, and the following cases are cited to sustain the action of the legislature: *State v. Douglas,* 26 Wis. 428, 430; *State ex rel. Martin v. Kalb,* 50 Wis. 178, 6 N. W. 557; *O'Connor v. Fond du Lac,* 109 Wis. 253, 269, 85 N. W. 327; *Fordyce v. State ex rel. Kelleher,* 115 Wis. 608, 614, 92 N. W. 430; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 48, 98 N. W. 954; *State ex rel. Buell v. Frear,* 146 Wis. 291, 299, 131 N. W. 832.

Were there no other constitutional provisions than sec. 7 of art. VII, the conclusion contended for might follow. However, there are other provisions. Sec. 6 of art. VII is as follows:

"The legislature may alter the limits or increase the number of circuits, making them as compact and convenient as practicable, and bounding them by county lines; but no such alteration or increase shall have the effect to remove a judge from office. In case of an increase of circuits, the judge or judges shall be elected as provided in this constitution and receive a salary not less than that herein provided for judges of the circuit court."

Sec. 13 of art. VII provides how judges may be removed and is as follows:

"Any judge of the supreme or circuit court may be removed from office by address of both houses of the legislature, if two thirds of all the members elected to each house concur therein, but no removal shall be made by virtue of this section unless the judge complained of shall have been served

with a copy of the charges against him, as the ground of ad-
dress, and shall have had an opportunity of being heard in
his defense.   On the question of removal the ayes and noes
shall be entered on the journals."

We are in effect asked to hold that by the amendment of
sec. 7 of art. VII, adopted in 1897, the constitution provided
for another form of removal, to wit, by act of the legislature
shortening the term of office of a circuit judge, which to all
intents and purposes effects a removal.

That such was the effect of the amendment would come as
a great surprise not only to the members of the profession but
to the people of the state generally.   Nothing in the history
of its adoption leads us to suppose that any such purpose was
contemplated either by the legislature who submitted the
amendment or by the people who approved it.   The constitu-
tion having prescribed the particular method by which a cir-
cuit judge may be removed, and the power of the legislature
to alter boundaries of circuits having carefully provided that
the alteration of a circuit should not have the effect of re-
moving a judge from office, the rule of construction *expressio
unius est exclusio alterius* is peculiarly applicable to this sit-
uation.   *State ex rel. Owen v. Donald,* 160 Wis. 21, 134,
151 N. W. 331.

We must hold, therefore, that the language of sec. 7 as
amended, "Every circuit judge shall reside in the circuit
from which he is elected, and shall hold his office for such
term and receive such compensation as the legislature shall
prescribe," must be read in connection with secs. 6 and 13 of
the same article, and the power of the legislature to fix the
term of office of circuit judges cannot be so exercised as to
have the effect of removing a circuit judge from office.   Ch. 6
of the Laws of 1915 had that effect and is therefore unconsti-
tutional and void.

It may be argued that the incumbent of that office, by vol-
untarily submitting himself as a candidate, consented to the
shortening of his term and that the law did not have the ef-

fect of removing him from office.   The right sought to be
vindicated in this action is a public right, to wit, the right of
the people to choose a circuit judge for branch No. 6 of the
Second circuit.   This action is entertained here in the exer-
cise of the original jurisdiction of this court, not to vindicate
a private right, but to establish a public right, although a pri-
vate right may be incidentally affected.   So the incumbent
was incapable of giving any assent, formal or informal, by
which the rights of the people could in any way be dimin-
ished.

Was the relator elected circuit judge for branch No. 6 at
the election held April 4, 1916 ?

It is contended that every one is presumed to know the
law; that the electors of Milwaukee county therefore knew
that there was to be an election on April 4, 1916, for the of-
fice of circuit judge of branch No. 6; that the right of the
electors cannot be taken away by the failure of election offi-
cers to perform the duties imposed upon them by law, and
that an election cannot be held invalid because no notice was
given; and the following cases are cited as sustaining the
proposition that relator was therefore legally elected: *State
ex rel. Peacock v. Orvis,* 20 Wis. 235; *State ex rel. Lutfring
v. Gœtze,* 22 Wis. 363; *State ex rel. Chase v. McKinney,* 25
Wis. 416; *State ex rel. Bruce v. Davidson,* 32 Wis. 114;
*State ex rel. Heim v. Williams,* 114 Wis. 402, 90 N. W. 452;
*Janesville W. Co. v. Janesville,* 156 Wis. 655, 146 N. W.
784.

In the first place there is no presumption that every person
knows the law as a fact.   A better statement of the rule is
that ignorance of the law affords no excuse for its violation.
It is a rule of administrative law and not strictly a rule of
evidence, and has no application to the facts in this case.
*Topolewski v. Plankinton P. Co.* 143 Wis. 52, 72, 126 N. W.
554.

An unconstitutional act of the legislature is not a law; it
confers no rights, it imposes no penalties, it affords no pro-

tection, and is not operative, and in legal contemplation it has no existence. *Norton v. Shelby Co.* 118 U. S. 425, 442, 6 Sup. Ct. 1121; *Bonnett v. Vallier,* 136 Wis. 193, 200, 116 N. W. 885. Therefore an election should have been held April 4, 1916, to elect a judge for branch No. 6 of the Second judicial circuit, ch. 6 of the Laws of 1915 being unconstitutional and void.

Was there an election? In order to answer this question the authorities must be reviewed. After a careful review and examination of the authorities cited above and many others not cited, it appears that two principles are deducible therefrom: (1) Where there is in fact an election at the time and place designated by law, such election is valid although the statutory notice is not given. (2) Where the failure to comply with the law results in a few out of a large number of electors exercising the right to vote at the time and place designated by law, there is no election. A restatement of the cases would extend this opinion to an undesirable length. The law is stated by the court in *State ex rel. Chase v. McKinney,* 25 Wis. 416, 420, as follows:

"Furthermore, it incontestably appears from the answer that no notice whatever was given that a district attorney was to be chosen at that election, either by the posting of the notices of the election by the officers whose duty it was to post them, or by the newspapers, or in any other manner; and the great body of the electors of the county voted for other officers, but cast no votes for district attorney, because they did not know that one was to be elected. As a consequence, in a county consisting of forty-one election districts, in which 7,129 votes were cast for other officers, there were cast for the relator 149 votes in five of the election districts; in thirty-six districts no votes being cast for district attorney. Now, under these circumstances, it seems to us impossible to say that there has been any valid election for district attorney such as the law contemplates. Certain it is, that the great mass of the electors of the county have exercised no choice as to who should fill the office of district attorney. No official notice, nor any other kind of notice, was given that a vacancy

existed in that office, which they were required to supply at the election. It is obvious, therefore, that there has been no expression of the will of the electors as to who should fill the vacancy."

In all these cases except the *Williams Case* and the *Janesville Case* elections were held at a time when the electors were not required to use an official ballot in voting. Since the decision of these cases fundamental changes have been made in the laws relating to elections. The legislative regulations in force at the time the election in question here was held were numerous and minute and must necessarily have affected one way or the other the minds of the electors. An elector was not permitted to prepare his ballot in any form he chose. When he approached the voting place he was handed a ballot which gave him notice of the offices which were to be voted for and of the candidates who were entitled to have their names printed upon such ballot. The law forbids the use of any other ballot (secs. 6.25 and 6.41, Stats.), and, subject to his right to erase the name of any candidate whose name is printed upon the ballot and to write in another, or to write in the name of a candidate for any office, the name of the office appearing in the appropriate place upon the ballot, he was required to express his choice in the manner indicated on the official ballot, and the use of stickers was strictly forbidden. Sub. (11), sec. 6.23, Stats. While there can be no claim in this case that the relator did not attempt to give general notice of his candidacy and caused notice of his claims to be generally and widely circulated, it also appeared at the same time that the secretary of state had upon his demand refused to give notice of an election, and likewise the county clerk had refused his demand that notice of an election be given. The people understood that the attorney general had ruled adversely to relator's claim that his name should be placed on the official ballot, as well as the county clerk, whose duty it was to provide the official ballots.

No nomination papers were filed or circulated. The fact that there was a law upon the statute books which required that an election should be held in 1915 instead of 1916, the fact that it had been passed by the legislature, approved by the judiciary committees thereof, and signed by the governor, was well known and generally understood. So that what the people of Milwaukee county in fact had notice of was that relator claimed that an election should be held; that all of the officers having to do with the administration of the election laws held and contended that no such election should be held. The people were not ignorant in regard to the matter; they believed that no election was. to be held. While ch. 6 of the Laws of 1915 gave no rights and did not alter the law, nevertheless the void law and the refusal of the election officers to act effactually prevented the electors of Milwaukee county from exercising their right to choose a circuit judge for the sixth branch of the Second judicial circuit.

Along with all the other facts which were commonly known was the fact that the courts stand open to afford relief to a person situated as was the relator and that no appeal was made to the courts for the exercise of the power possessed by them. An application by relator for the exercise of the original jurisdiction of this court under circumstances such as are presented by this record would have met with a favorable and speedy response, as the records of this court in recent years show.

If failure to give the statutory notice were the only defect appearing, we might feel bound, in view of the prior decisions of this court and of the very extensive notice which relator gave, to hold that there was a valid election although but a comparatively few electors voted, as in the *Goetze Case* (22 Wis. 363). Here, however, there was not only an entire want of official notice of an election, but there was a complete failure to comply with the election laws in any re-

State ex rel. Kleist v. Donald, 164 Wis. 545.

spect.    The laws relating to the form of the official ballot; the right of candidates to have their names appear thereon; its preparation and distribution; the means adopted for its identification as the official ballot; the minute regulations as to how the voter is to indicate his preference; the denial of the right to use any other form of ballot, and the numerous other provisions regulating its use, have created a situation far different from that which existed when each elector prepared or had prepared for him his own ballot in any form he might choose.    Under the law as it now stands the administrative officers of the state and of the municipalities are charged with the duty of determining certain questions, and the electorate very generally rely upon the determination so made.    In this case there is no claim that the refusal of the secretary of state to give the statutory notice or of any other officer to perform any duty imposed upon him by law was wilful or done in disregard of his official duty, but upon the contrary was done in good faith and based throughout upon a determination by the respective officers that no election for the office in question was required by law to be held as contended by relator.    There was no failure of the officers to act; there was a refusal to act, based upon a claim of right. It is not necessary in this case to hold that a ballot cast for an office not appearing upon the official ballot as required by law is void, although such ruling might be sustained upon reason and authority.    We prefer in this case to rest our decision upon the proposition that it clearly appears upon the whole record that by reason of the refusal of the administrative officers to perform the duties imposed upon them by law, the electors of Milwaukee county generally believed that no election was in fact to be held and that the casting of a comparatively few out of a large number of votes for the relator did not constitute an election.    If it be argued that this conclusion disfranchises the electors who did exercise the right which the law gave them, it is a sufficient answer to say that

the contrary conclusion would disfranchise twenty times as many.

It is to be regretted that the relator did not seek judicial relief at the appropriate time, when the result would have been that the electorate generally would have been officially apprised of the fact that an election for the office in question was to be held. However, it clearly appears upon the facts presented by the record that the electors did not have such belief and that the refusal of the election officers to give the notice required and to comply with the other requirements of the law relating to the holding of an election resulted in no election in fact being held.

The conclusion arrived at in this case does not overrule the former decisions of this court beginning with *State ex rel. Peacock v. Orvis,* 20 Wis. 235, but the principles embodied in those decisions are adhered to. The situation presented by this record, in view of subsequent statutory regulations relating to elections, and especially the provisions prohibiting the use of any other than the official ballot (sub. (2), sec. 6.25, Stats.) and requiring the voter to indicate his choice in the manner specified in ch. 6, clearly distinguish this case from any of the cases referred to. These laws have been in force for a long period of time and they have not been attacked as unreasonable, and we must therefore assume that they are reasonable, constitutional legislative regulations. The failure of the administrative officers as well as the candidate to comply with the requirements of these laws presents a different situation than any heretofore considered by this court.

It has been suggested that the present incumbent of the office should be made a party to these proceedings. We know judicially that the present incumbent can hold his office only until his successor is elected and qualified; that in any event there must be an election at the coming spring election for the office in question; so that the rights of the present incum-

bent are neither diminished nor enlarged by the judgment in this case.

*By the Court.*—Motion to quash writ granted without costs.

ESCHWEILER, J., took no part.