JAMES H. TAYLOR, District Attorney Burnett County
You have requested my opinion on several questions relating to the referendum election held in Burnett County on November 2, 1976, on whether the county seat should be removed from Grantsburg to the Town of Siren. *Page 220 
My opinion is based on the following facts supplied with your request:
A petition seeking a change of the county seat from Grantsburg to the Town of Siren was presented to the Burnett County Board in November, 1975. In the spring of 1976, before the first petition was acted upon, three more petitions were presented to the Board. The Board consolidated the petitions and, on October 21, 1976, having determined that the petitions had been signed by at least one-half of the resident freeholders of the county, decided to submit the question of removal of the county seat to a vote of the qualified voters of the county on November 2, 1976, the day of the general election. Notice of the election and several other articles indicating that the question would appear on the November 2, 1976, ballot were published on October 27, 1976, in the Burnett County Sentinel, which is the official Burnett County newspaper, and in the Inter-County Leader, which has a large circulation in the county. Since October, 1975, and particularly for several months immediately preceding the election, the question of removal of the county seat received considerable coverage in the newspapers, resulting in the voters of the county being well informed on the issue. The county clerk, because notice of the election was not published on the last Tuesday in May, 1976, and the first Tuesday in June, 1976, refused to distribute the ballots for the election. The County Board, therefore, appointed a committee to distribute the ballots. However, ballots were distributed to the voters in only 16 wards because the municipal clerks in 8 wards refused to distribute the ballots. The total number of voters who went to the polls in the 24 wards of the county was 6,557, which was a greater than normal turnout of voters. The total number of votes on the removal question in the 16 wards where the ballots were distributed was 3,845, with 3,257 voting in favor of removal and 588 voting against removal, with 134 voters not voting on the question. In the 8 wards where ballots were not distributed. 2,578 voters were not given an opportunity to vote on the question.
You first ask:
 "Is it proper to consolidate the petitions and consider them as one petition?"
This question was answered by State ex rel. Hawley v. Board ofSupervisors of Polk County, 88 Wis. 355, 60 N.W. 266 (1894), which also involved petitions seeking a change of the county seat. The *Page 221 
court held that two petitions having signatures of different qualified signers should be considered and acted upon by the County Board as one petition although the second petition was presented while the first one was under consideration. Therefore, the answer to your first question is "Yes."
You next ask:
"Was the election valid?"
This question is neither so easily nor definitively answered. The facts indicate that certain election statutes regulating the conduct of elections were not observed, and the answer to the question depends on whether the statutes which were violated were mandatory or directory.
The rule for the construction of election statutes as to whether mandatory or directory, adopted by the Wisconsin Supreme Court, is as follows:
 "`"`The difference between mandatory and directory provisions of election statutes lies in the consequence of nonobservance: An act done in violation of a mandatory provision is void, whereas an act done in violation of a directory provision, while improper, may nevertheless be valid. Deviations from directory provisions of election statutes are usually termed "irregularities," and, as has been shown in the preceding subdivision, such irregularities do not vitiate an election. Statutes giving directions as to mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result, as where the statute merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election.'"'" Lanser v. Koconis, 62 Wis.2d 86, 91, 214 N.W.2d 425
(1974).
In addition, sec. 5.01 (1), Stats., in directing the type of construction that should be given to the election statutes, states:
 "Title II shall give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of its provisions." *Page 222 
In keeping with sec. 5.01 (1), Stats., the Wisconsin Supreme Court has quite consistently held that where there is substantial compliance with, but a deviation from, a provision in an election statute, thereby giving rise to the question whether the requirement is directory or mandatory, the provision will be construed as directory so as to preserve the will of the electors. Lanser v. Koconis, supra.
As regards the election in question, there were a number of provisions of the election statutes which were not observed: sec.10.06(2) (h), which requires that notice of the election be published on the last Tuesday in May and the first Tuesday in June preceding the general election; sec. 10.06 (2) (m), which requires that notice of the election be published on the second Monday preceding the general election; sec. 7.10(3), which requires the county clerk to distribute the ballots to the municipal clerks three weeks before the election; sec. 7.50(1) (a), which requires that only ballots provided by the person authorized to have them printed shall be cast and counted in an election; and, in 8 of the 24 wards of the county, sec.7.15(1)(c), which requires the municipal clerks to provide the ballots for the election to the ballot clerks.
It should be noted that the only provision which declares that noncompliance with its terms might be fatal is sec. 7.50(1) (a), Stats. Hence, under the rule set forth in Lanser v. Koconis,supra, secs. 10.06(2)(h), 10.06(2)(m), 7.10(3), and 7.15(1)(c), Stats., would be construed as directory unless, under the circumstances in this case, noncompliance therewith has changed or rendered doubtful the result of the election.
There have been a number of cases decided by the Wisconsin Supreme Court involving the failure to give proper notice of an election which give us some guidance in the present situation.
As you point out, the rule of this state is that where there is in fact an election at the time and place designated by law, such election is valid although the statutory notice is not given.State ex rel. Kleist v. Donald, 164 Wis. 545, 160 N.W. 1067
(1917);Janesville Water Co. v. Janesville, 156 Wis. 655,146 N.W. 784 (1914). However, such a rule cannot be applied to special elections or special questions submitted at a general election, for there is no presumption that the voters knew anything about the matter. Janesville Water Co. v. Janesville, id. Hence, in theJanesville case, the court held that where the statutes and the city charter required that ten days' notice be *Page 223 
given of an election upon the question of the acquisition of a public utility by the City of Janesville, but the first publication was nine days before the election, and it did not satisfactorily appear that the voters had adequate time to investigate, consider, and discuss the subject voted on, the election was invalid. However, in State ex rel. Oaks v. Brown,211 Wis. 571, 249 N.W. 50 (1933), the court held that an election on the question of whether the City of Oshkosh should change from a commission form of government to an aldermanic form was valid although the notice given wax not in compliance with the requirements of the applicable statutes The court pointed out that while it would have had great difficulty in declaring the election valid if it relied on the rule announced in JanesvilleWater Co. v. Janesville, supra, sec. 5.01(1), Stats., which was enacted shortly after the Janesville case, indicated the Legislature's intention that if the will of the electors has been in fact ascertained, that will must be given effect notwithstanding the informality of procedure or failure to comply with all the requirements of the statutes. And, in CommonwealthTelephone Co. v. Public Service Comm., 219 Wis. 607, 263 N.W. 665
(1935), the court held that a special election on whether the City of Darlington should acquire the property of a privately-owned public utility was valid notwithstanding a failure to give the statutory ten days' notice of the election. The court pointed out that the notice and information actually given to the electors by the notices that were published, and in other unofficial publications and circulars, were as widespread and ample as the electors would have received from notices published in strict compliance with the statute.
In the present situation, the voters appear to have been as well informed of the time, place, and manner of the election and the issue involved as they would have been had notices been published in strict compliance with the statutes. Moreover, it appears that a majority of all the qualified voters in the county who went to the polls on November 2, 1976, excluding those who had an opportunity to vote on the question of removal but chose not to, voted in the affirmative. The facts show that the statutory purpose of notice was fully met and that the results could not have been otherwise.
In view of this, it is my opinion that the election would not be invalidated because of the failure to comply with the notice requirements of the statutes or because of the failure of the municipal *Page 224 
clerks in 8 wards to provide ballots to the voters, since the vote in the 8 wards could not have affected the result of the election.
As regards the failure of the county clerk to distribute the ballots to the municipal clerks and the failure to observe the provisions of sec. 7.50(1)(a), Stats., which expressly declares that only ballots provided by the person authorized to have them printed, in this case the county clerk, shall be cast and counted in any election, it must be remembered that the purpose of statutes in reference to official ballots is to prevent fraud. 26 Am. Jur. 2d, Elections sec. 224. In this case, there is no evidence of fraud, and fraud should not be presumed. Ollmann v.Kowalewski, 238 Wis. 574, 300 N.W. 183 (1941). Furthermore, it is a well settled legal proposition that a voter is not to be deprived of his constitutional right of suffrage through the failure of election officials to perform their duties where the elector himself is not delinquent in the duty which the law imposes upon him. State ex rel. Symmonds v. Barnett, 182 Wis. 114,195 N.W. 707 (1923); State ex rel. Wood v. Baker, 38 Wis. 71
(1875).
In Ollmann v. Kowalewski, supra, a number of ballots cast at the voting place the day of the election here initialed by only one ballot clerk who affixed his own initials and those of the other ballot clerk to the ballots. The court held that despite the existence of what was then sec. 6.41, Stats., which provided that any ballot which was not endorsed by the signatures or autograph initials of both ballot clerks shall be void and not counted, the ballots were properly counted. The court reasoned:
 ". . . The voter would not knowingly be doing wrong. And not to count his vote for no fault of his own would deprive him of his constitutional right to vote. Any statute that purported to authorize refusal to count ballots cast under the instant circumstance would be unconstitutional. A statute purporting so to operate would be void, rather than the ballots. And the ballots not being void, should be counted notwithstanding the statute. Voting is a constitutional right, sec. 1, art. III, Const., and any statute that denies a qualified elector the right to vote is unconstitutional and void . . . ." P. 578.
The court also pointed out that "`Nonfeasance or malfeasance of public officers could have no effect to impair a personal, vested, constitutional right'" and that "the voters' constitutional right to vote `cannot be baffled by latent official failure or defect.'" P. 579. *Page 225 
The principle of law relied on and the reasoning of the court in the Ollmann case are, in my opinion, fully applicable to the present situation.
In Lanser v. Koconis, supra, a number of absentee ballots cast by residents of a nursing home were delivered by a city courier rather than mailed or delivered personally to the respective electors as required by sec. 6.87(3), Stats. The court held that despite sec. 6.87(6), Stats., which provided that any ballot not mailed or delivered as provided in sec. 6.87(3), Stats., shall not be counted, the ballots were properly counted. The court stated:
 "We are fully cognizant of possible abuses of the absentee voter's law and share the concern of the legislature in preventing any such abuse. If the record in this case indicated the slightest evidence of any fraud, connivance or attempted undue influence, we would have no hesitancy in declaring the absentee voters' ballots invalid. However, we are not inclined to disenfranchise these voters who acted in conformance with the statutory requirements. There is absolutely no evidence from which it could be inferred that the method of delivery by the municipal clerk in any way affected their vote.
 "In Sommerfeld v. Board of Canvassers, supra, pages 303, 304, it was stated:
 "`. . . We have held that the word "shall" can be construed to mean "may." George Williams College v. Williams Bay, 242 Wis. 311, 7 N.W.2d 891. In passing upon statutes regulating absentee voting, the court should look to the whole and every part of the election laws, the intent of the entire plan, the reasons and spirit for their adoption, and try to give effect to every portion thereof.'
 "Considering all the facts of this case, we are of the opinion that the mandate of sec. 5.01, Stats., requires the conclusion that these absentee voters' ballots be counted." Pp. 93-94.
While the Lanser case involved absentee ballots, the principle of law relied on and the reasoning of the court are, in my opinion, also applicable to the present situation; indeed, even more so since absentee voting is a privilege, not an absolute right. Clapp v. Joint School District, 21 Wis.2d 473,124 N.W.2d 678 (1963). The facts in this case do not indicate any evidence of fraud, connivance, or *Page 226 
attempted undue influence, nor is there any evidence from which it could be inferred that the distribution of the ballots by the committee appointed by the Burnett County Board in any way affected the vote.
Therefore, it is my opinion that under the circumstances of this case, sec. 7.50(1)(a), Stats., would be held to be directory and not mandatory and that the election would not be declared invalid because of the failure of the county clerk to distribute the ballots.
Having indicated that in my opinion the petitions were properly considered and acted upon as one and that the election was valid, there is no need to answer any of the remaining questions. However, before closing, I wish to commend you for observing the requirements set forth in 62 Op. Att'y Gen. Preface (1973) in requesting this opinion and for providing me with such detailed information regarding the relevant facts in this matter. On questions involving the validity of an election, the accuracy of my opinion is dependent upon my being as fully informed as possible about the circumstances surrounding the election.
BCL:JJG