STATE of Wisconsin, Plaintiff-Respondent,

v.

Juergen HUEBNER, Defendant-Appellant-Petitioner.†

Supreme Court

No. 98–2470–CR. *Oral argument March 1, 2000.—Decided June 20, 2000.*

2000 WI 59

(Also reported in 611 N.W.2d 727.)

†Motion for reconsideration denied September 13, 2000.

486

For the defendant-appellant-petitioner there was a brief by *Sally Day* and *Law Office of Sally Day*, Milwaukee, and oral argument by *Sally Day*.

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. JON P. WILCOX, J. The issue in this case is whether a defendant who did not object to the use of a six-person jury at his misdemeanor trial, as authorized by Wis. Stat. § 756.096(3)(am), may obtain a new trial in reliance on *State v. Hansford*'s holding that § 756.096(3)(am) is unconstitutional. We conclude that he may not.

I

¶ 2. On February 18, 1998, the defendant Juergen Huebner was tried and convicted of two misdemeanors in the Circuit Court for Milwaukee County, Clare L. Fiorenza, Judge. The verdict in Huebner's case was rendered by a six-person jury, under the authority of Wis. Stat. § 756.096(3)(am)(1995–96).[1]

_____

[1] Wisconsin Stat. § 756.096(3)(am)(1995–96) provided, "[a] jury in misdemeanor cases shall consist of 6 persons." Section 756.096 has subsequently been repealed. Essentially the same

¶ 3. At the time of Huebner's trial, this court had accepted the court of appeals' certification of *State v. Hansford*, No. 97–0885–CR, on the question of whether the six-person jury authorized by Wis. Stat. § 756.096(3)(am) violated art. I, § 7 of the Wisconsin Constitution. Huebner acknowledges that although *Hansford* was pending before this court at the time of his trial, he did not object to the use of a six-person jury at his trial.

¶ 4. On June 19, 1998, this court released its decision in *State v. Hansford* holding that the six-person jury authorized by Wis. Stat. § 756.096(3)(am) violated the jury trial guarantee of art. I, § 7 of the Wisconsin Constitution. *State v. Hansford*, 219 Wis. 2d 226, 243, 580 N.W.2d 171 (1998).

¶ 5. On August 25, 1998, Huebner filed a notice of appeal. Huebner's sole argument on appeal is that even though he did not object to the six-person jury at the time of his trial, *Hansford* applies retroactively to invalidate his conviction by a six-person jury. Huebner raises no other challenge to his conviction.

¶ 6. In an unpublished opinion, the court of appeals rejected Huebner's request for a new trial. *State v. Huebner*, No. 98–2470–CR, unpublished slip. op. (Wis. Ct. App. Dec. 22, 1998). The court of appeals concluded that *Hansford* only applies retroactively to cases in which the defendant objected to his trial by a six-person jury. *Id.* at 3. The court reasoned that although an increased number of jurors provides some numerical advantage to a defendant, that advantage

---

language has been reenacted as § 756.06(2)(am)(1997–98). *See Hansford*, 219 Wis. 2d at 229 n.2 (citing WI Order 97–2 (S. Ct. Order 96–08), 207 Wis. 2d xv).

All subsequent references to the Wisconsin Statutes are to the 1995–96 volumes unless otherwise indicated.

did not warrant overturning an otherwise error-free trial when the defendant never objected to the six-person jury. *Id.* The court also rejected Huebner's argument that he had received ineffective assistance of counsel, because the court found no reasonable probability that a twelve-person jury would have produced a different outcome in Huebner's case. *Id.* at 3 and n.2.

¶ 7. This court granted Huebner's petition for review.

## II

¶ 8. Huebner concedes that he made no objection to the use of a six-person jury at his trial. Furthermore, Huebner has abandoned any claim that he received ineffective assistance of counsel. Instead, Huebner now asserts that his trial counsel's assistance was neither incompetent nor deficient. Nonetheless, Huebner claims that this court should grant him a new trial under *Hansford*.

¶ 9. To support this argument, Huebner relies primarily on the retroactivity analysis set forth in *State v. Koch*, 175 Wis. 2d 684, 499 N.W.2d 152 (1993). In *Koch*, this court adopted the retroactivity analysis that the United States Supreme Court applies to cases on direct appeal. Under this approach,

> '[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'

*Koch*, 175 Wis. 2d at 694 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). According to Huebner, this

rule means that *Hansford* applies retroactively to his case.

¶ 10. The flaw in Huebner's reasoning is that unlike the defendants in *Koch*, *Griffith*, and *Hansford*, Huebner made no constitutional objection at the trial court level. It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal. *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). The party who raises an issue on appeal bears the burden of showing that the issue was raised before the circuit court. *Id.* at 604.

¶ 11. We have described this rule as the "waiver rule,"[2] in the sense that issues that are not preserved are deemed waived. *See id.*; *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). The waiver rule is not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice. *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 894–95 (1991) (Scalia, J., concurring)(citing 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2472 at 455 (1971)). The rule promotes both efficiency and fairness, and "go[es] to the heart of

[2] We recognize that labeling this rule the "waiver rule" is imprecise. It might be better to label the rule requiring issue preservation as the "forfeiture rule," because it refers to the forfeiture of a right by silence rather than the intentional relinquishment of a known right. *See United States v. Olano*, 507 U.S. 725, 733 (1993); *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 894–95 n.2 (1991) (Scalia, J., concurring). However, we have often referred to the issue preservation rule as the "waiver rule" in the past, and we do so here.

the common law tradition and the adversary system." *Caban*, 210 Wis. 2d at 604–05; *see also Erickson*, 227 Wis. 2d at 766.

¶ 12. The waiver rule serves several important objectives. Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal. *Erickson*, 227 Wis. 2d at 766. It also gives both parties and the trial judge notice of the issue and a fair opportunity to address the objection. *Erickson*, 227 Wis. 2d at 766. Furthermore, the waiver rule encourages attorneys to diligently prepare for and conduct trials. *Vollmer v. Luety*, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990). Finally, the rule prevents attorneys from "sandbagging" errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal. *Freytag*, 501 U.S. at 895; *see also Vollmer*, 156 Wis. 2d at 11. For all of these reasons, the waiver rule is essential to the efficient and fair conduct of our adversary system of justice.

¶ 13. Huebner does not attempt to show that the constitutional issue he raises on appeal was raised below. He concedes that at the trial court level he acquiesced in the application of Wis. Stat. § 756.096(3)(am) to his case.

¶ 14. Instead, Huebner argues that he can circumvent the waiver rule because of constitutional considerations. Although the waiver rule is an important principle of judicial administration, it does not apply to all defects in trial court proceedings. Huebner points out that a criminal defendant has certain fundamental constitutional rights that may only be waived personally and expressly. *State v. Albright*, 96 Wis. 2d 122, 129–30, 291 N.W.2d 487 (1980). These fundamen-

493

tal rights include the right to the assistance of counsel, the right to refrain from self-incrimination, and the right to have a trial by jury. *Id.* at 130 (citations omitted). Such rights cannot be forfeited by mere failure to object.

¶ 15. Huebner argues that his right to a twelve-member jury falls within this category of rights. He cites *Albright*'s statement that "the decision whether to request a trial by jury" is a fundamental, personal right. *See Albright*, 96 Wis. 2d at 130. Equating the right to a jury of twelve members with the right to a trial by jury, Huebner argues that he could not forfeit his right to a twelve-member jury in the absence of an express, personal waiver.

¶ 16. Whether Huebner's waiver of his right to a twelve- member jury could only be made expressly and personally is a question that requires the application of constitutional principles. We review such questions independently. *State v. Reitter*, 227 Wis. 2d 213, 223, 595 N.W.2d 646 (1999).

¶ 17. As *Albright* states, the right to a jury trial is a fundamental constitutional right that may only be waived personally and expressly. However, Huebner has not lost his right to a jury trial. A trial by six jurors is not equivalent to no jury trial at all. Huebner received an otherwise fair and error-free trial by six jurors.

¶ 18. Nothing in *Hansford* suggests that having a six-person jury trial is equivalent to having no jury trial at all. *Hansford* did not state that a six-person jury is procedurally unfair or that it is an inherently invalid factfinding mechanism. *Hansford* only held that a six-person jury trial is not consistent with the

historical meaning of the right to a jury trial under art. I, § 7 of the Wisconsin Constitution. *Hansford*, 219 Wis. 2d at 249. The court reached this conclusion based on a careful examination of the history of the Wisconsin Constitution and this court's longstanding interpretation of the right to trial by jury in art. I, §§ 5 and 7. *Id.* at 242–43.

¶ 19. We find nothing in *Hansford* to support the conclusion that the difference between a six-person jury trial and a twelve-person jury trial is so fundamental that a six-person jury trial, which was conducted without objection under the express authority of a statute, is automatically invalid.

¶ 20. Our conclusion on this point may appear to conflict with *State v. Cooley*, 105 Wis. 2d 642, 645–46, 315 N.W.2d 369 (Ct. App. 1981). *See also State v. Wingo*, 2000 WI 31, ¶ 16, 233 Wis. 2d 467, 609 N.W.2d 162 (discussing *Cooley*). However, we conclude that *Cooley* does not apply to *Huebner*'s case.

¶ 21. The defendant in *Cooley* was on trial for second-degree sexual assault. *Cooley*, 105 Wis. 2d at 643. During the trial, one of the jurors announced that she knew the victim's mother, who was a witness in the case. *Id.* at 644. The judge examined the juror and concluded that the juror was not biased. *Id.* The judge therefore denied the defendant's motion to strike the juror and grant a mistrial. *Id.* However, the court gave the defendant's attorney the option of removing the allegedly biased juror and proceeding with an eleven-member jury. *Id.* Faced with these options, the defendant's attorney chose to proceed with the eleven-member jury. *Id.*

¶ 22. On appeal, the defendant argued that because he did not personally and expressly waive his right to a full jury of twelve members, the eleven-mem-

ber jury violated his constitutional right to a jury trial. *Id.* The court of appeals agreed and concluded that the procedural safeguards for waiver of a trial by jury apply equally to waiver of a full jury of twelve members. *Cooley*, 105 Wis. 2d at 645–46. Because the defendant did not personally waive his right to a twelve-member jury, the court of appeals reversed the defendant's conviction. *Id.* at 646.

¶ 23. Unlike the six-person jury in Huebner's case, the eleven-member jury in *Cooley* was not authorized by any statute. Instead, *Cooley* involved a statutorily deficient trial to which the defendant's attorney agreed in order to avoid an allegedly biased juror.

¶ 24. We agree with *Cooley*'s holding that when the trial court itself has induced a defendant to give up his statutory and constitutional right to a twelve-member jury, the defendant's waiver must be made personally and expressly. *See also Wingo*, 2000 WI 31 at ¶ 17. However, we do not think that the same procedure must be followed when a statute authorizes a jury of fewer than twelve members. In Huebner's case, a recently enacted statute expressly authorized a six-person jury. We conclude that under these limited circumstances, Huebner's failure to object to the use of a six-person jury can function as a waiver of his constitutional objection.

¶ 25. We also reject Huebner's undeveloped argument that his trial by a six-person jury violated the procedural due process guarantees of the United States and Wisconsin Constitutions. As *Hansford* noted, a six-person jury trial is entirely consistent with the United States Constitution. *Hansford*, 219 Wis. 2d at 241–42 and n.14 (citing *Williams v. Florida*, 399

U.S. 78 (1970)). In addition, *Hansford*'s invalidation of Wis. Stat. § 756.096(3)(am) was not based on the procedural due process guarantee of the Wisconsin Constitution. Huebner has not established that his six-person jury trial provided him with insufficient due process under the federal or state constitutions.

¶ 26. We hold that the waiver rule applies to Huebner's constitutional objection to the use of a six-person jury at his trial. By failing to raise his objection to the use of a six-person jury, Huebner forfeited his right to a twelve-person jury.

## III

¶ 27. Of course, even when the waiver rule applies, this court may nevertheless exercise its discretionary power to reverse the judgment and grant a new trial in the interests of justice. Huebner urges this court to exercise its discretionary power to reverse his conviction and apply *Hansford* to his case retroactively.

¶ 28. Appellate courts have the power to consider issues raised for the first time on appeal. *See Vollmer*, 156 Wis. 2d at 13; *Caban*, 210 Wis. 2d at 609. Under Wis. Stat. § 751.06, this court may exercise its discretion to reverse a circuit court judgment (1) whenever it is probable that justice has for any reason miscarried, or (2) whenever the real controversy has not been fully tried.

¶ 29. Huebner argues that we should reverse his conviction because his case is analogous to *State v. Benzel*, in which the court of appeals applied a decision of this court retroactively to reverse a defendant's con-

viction. *State v. Benzel*, 220 Wis. 2d 588, 583 N.W.2d 434 (Ct. App. 1998).

¶ 30. *Benzel* is not analogous to Huebner's case. Benzel was "convicted of a charge based on a statute that has been found constitutionally invalid," the drug tax stamp law. *Benzel*, 220 Wis. 2d at 591. Thus, Benzel's conviction represented a miscarriage of justice; his conviction was based on conduct that could not constitutionally be punished. *Id.* at 592. In contrast, Huebner does not challenge the statutes under which he was convicted. He asks us to overturn his conviction because of a procedural defect to which he did not object at the time of trial.

¶ 31. We agree with the court of appeals that the procedural defect that Huebner complains of does not warrant reversal of his conviction. The use of a six-person jury rather than a twelve-person jury did not undermine the fundamental integrity of Huebner's trial. *See Huebner*, unpublished slip op. at 3 n.1. Rather, "this case concerns the application of a constitutional principle that 'does not affect the basic accuracy of the factfinding process at trial.' " *Id.* (quoting *Benzel*, 220 Wis. 2d at 592). We conclude that the interests of justice do not require us to exercise our discretionary power to reverse Huebner's conviction.

¶ 32. Instead, the interests of justice in this case demand adherence to the rule that objections that are not raised at the trial court will not be considered on appeal. This case demonstrates why the waiver rule is essential to the efficiency and fairness of the judicial process.

¶ 33. Wisconsin Stat. § 756.096(3)(am), the statute that authorized six-person jury trials in misdemeanor cases, was enacted on June 7, 1996. 1995 Wis. Act 427. Thus, the statute had been in effect for

only 20 months at the time of Huebner's trial. As *Hansford* explained, the statute directly contradicted this court's long-standing interpretation of the Wisconsin Constitution. *See Hansford*, 219 Wis. 2d at 237–241. Hansford and other defendants challenged the constitutionality of the statute, and the court of appeals certified the question in *Hansford* to this court on December 11, 1997. This court accepted certification of *Hansford* certification on January 23, 1998, approximately one month before Huebner's trial.

¶ 34. Under these circumstances, Huebner had a strong basis for objecting to the constitutionality of his trial by a six-person jury under Wis. Stat. § 756.096(3)(am). If Huebner had raised such an objection before his trial, the trial judge easily could have decided to empanel a twelve-person jury and obviate the risk that the six-person jury's verdict would be invalidated on appeal. Huebner's failure to object deprived the trial court of the opportunity to avoid this error. Proceeding on the reasonable assumption that Huebner did not object to the use of a six-person jury in his case, the trial court provided Huebner with a full, fair, and otherwise error-free trial by a six-person jury.

¶ 35. To invalidate Huebner's trial, and the trials of all those other defendants who were convicted by six-person juries under the authority of Wis. Stat. § 756.096(3)(am) without objection, would result in a tremendous waste of judicial resources. Because Huebner has not established that a miscarriage of justice has occurred or that the real controversy in his case was not tried, we decline to exercise our discretionary power to reverse his conviction by a six-person jury.

## IV

¶ 36. In conclusion, we hold that Huebner forfeited his right to a twelve-person jury when he failed to object to the use of a six-person jury at his misdemeanor trial. We also decline to exercise our discretionary power to reverse Huebner's conviction. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 37. DAVID T. PROSSER, J. *(concurring)*. In 1996 the Wisconsin legislature passed a statute mandating six-person juries in misdemeanor cases. Wis. Stat. § 756.096(3)(am) (1995–96). In 1998 this court held the statute unconstitutional as a violation of art. I, § 7 of the Wisconsin Constitution. *State v. Hansford*, 219 Wis. 2d 226, 230, 580 N.W.2d 171 (1998).

¶ 38. This case is one of many in which six-person juries convicted defendants of crimes before announcement of the *Hansford* decision. Juergen Huebner seeks to overturn his conviction on the grounds that trial by a six-person jury deprived him of a fundamental constitutional right. The majority rejects his request, holding that the defendant waived his right to a twelve-person jury by failing to make a timely objection.

¶ 39. I agree with the result here but for different reasons. In my view, the defendant is not entitled to a new trial because the statute authorizing six-person juries in misdemeanor cases was constitutional at the time his case was tried. The *Hansford* decision was a serious mistake and should be overruled.

## I

¶ 40. On July 13, 1787, Congress approved "An Ordinance for the Government of the Territory of the United States Northwest of the River Ohio." The "Northwest Ordinance" provided principles to govern the territory that evolved into several north central states, including Wisconsin. The Northwest Ordinance contained fundamental principles of civil liberty that would "forever remain unalterable, unless by common consent." Section 13, ¶¶ 1–2.

¶ 41. Article II under Section 13 reads in part: "The inhabitants of the said territory shall always be entitled to the benefits of the writ of habeas corpus, and of the trial by jury."

¶ 42. In 1836 Congress passed "An Act establishing the Territorial Government of Wisconsin." In Section 12 of the Act, Congress provided that the inhabitants of the Territory were entitled to the rights, privileges, and advantages contained in the Northwest Ordinance.

¶ 43. The Wisconsin Constitution was adopted in March 1848, two months before Wisconsin officially became a state. The original document contained several provisions that are relevant to this case. Article I, § 5 provided for trial by jury: "The right of trial by jury shall remain inviolate; and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases, in the manner prescribed by law."

¶ 44. Article I, § 7 provided for the rights of the accused:

> In all criminal prosecutions, the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation

against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment or information, to a speedy public trial by an impartial jury of the county or district wherein the offence shall have been committed; which county or district shall have been previously ascertained by law.

¶ 45. Article I, § 8 described presentment or indictment in criminal cases: "No person shall be held to answer for a criminal offence, unless on the presentment or indictment of a grand jury, except. . .in cases cognizable by justices of the peace."

¶ 46. These sections recognized different levels of prosecution and offense and different rights depending upon the circumstances. Then as now, art. I, § 7 begins with the phrase, "In all criminal prosecutions." This language is broader than the phrase "in prosecutions by indictment or information" contained in the same section. Article I, § 8 suggested that "cases cognizable by justices of the peace" need not be commenced by "the presentment or indictment of a grand jury," presumably because those cases were less serious.

¶ 47. Article VII of the new constitution established the structure and powers of the Wisconsin judiciary. Section 2 provided that the judicial power of the state, both as to matters of law and equity, was vested in a supreme court, circuit courts, courts of probate, and in justices of the peace. Section 15 described justices of the peace and gave to them "such civil and *criminal jurisdiction as shall be prescribed by law*" (emphasis added).

¶ 48. Reading these provisions together, we see that the 1848 constitution ensured the accused "in prosecutions by indictment or information" the right to

"trial by an impartial jury." It did not, however, require "presentment or indictment" in cases cognizable by justices of the peace. The constitution gave the legislature the authority to determine by law what cases were cognizable by justices of the peace, and hence what cases were not accompanied by presentment or indictment and what cases were not guaranteed a jury trial. Unless one is prepared to say that there is no distinction between "*all* criminal prosecutions" and "prosecutions by indictment or information," the Wisconsin Constitution did not unequivocally bestow upon all criminal defendants the constitutional guarantee of a jury trial. Even as it declared rights, the 1848 constitution afforded the legislature the power to modify those rights in certain cases.

## II

¶ 49. The original constitution not only assigned general legislative power to a senate and assembly but also empowered the new legislature to change existing law. Article XIV, § 2 authorized change in existing *statutory* law: "All laws now in force in the territory of Wisconsin, which are not repugnant to this constitution, shall remain in force until they expire by their own limitation, *or be altered or repealed by the legislature*" (emphasis added).

¶ 50. Section 13 authorized change in the common law: "Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state *until altered or suspended by the legislature*" (emphasis added).

¶ 51. Common law prevails in Wisconsin until changed by statute. *Aaby v. Citizens Nat'l Bank*, 197 Wis. 56, 57, 221 N.W. 417 (1928). A rule of common law

persistently embraced by text writers and the courts of sister states should not be ignored "unless a legislative intent to abrogate it has been clearly expressed." *Nickel v. Hardware Mut. Cas. Co.*, 269 Wis. 647, 649, 70 N.W.2d 205 (1955) (citing *Kappers v. Cast Stone Constr. Co.*, 184 Wis. 627, 200 N.W. 376 (1924)). To abrogate the common law, the intent of the legislature must be clearly expressed, either in specific language or in such a manner as to leave no reasonable doubt of the legislature's purpose. *Sullivan v. School Dist. No. 1 Tomah*, 179 Wis. 502, 506, 191 N.W. 1020 (1923).

¶ 52.　Our decisions unquestionably show great deference to the common law, but the common law is not immutable. The legislature may modify or repeal the common law, as long as the change does not conflict with the constitution.

## III

¶ 53.　In 1848 the first Wisconsin legislature engaged three people as commissioners to collate and revise all the public acts of the state of a general and permanent nature, in force at the close of the session. Revised Statutes of Wisconsin (1849) at vii. The commissioners reported their work to the second legislature. The second legislature eventually approved the revisions. Consequently, a substantial portion of the law enacted in 1849 was carried over from the Wisconsin Territory.

¶ 54.　In 1849 the legislature expressed its intent to have six-person juries in certain cases. Chapter 86 of the Revised Statutes of Wisconsin (1849) related to county courts. Section 16 of Chapter 86 provided:

> If an issue of law be made in the cause, it shall be tried by the court; if an issue of fact, it shall on

demand of either party, as hereinafter provided, be tried by a jury to consist of not more than six persons; and if no jury be demanded by either party, the issue shall be tried by the court.

¶ 55. Chapter 88 of the Revised Statutes of Wisconsin (1849) related to "Justices' Courts," meaning justices of the peace. Section 80 of this chapter provided:

> In every civil cause brought before a justice of the peace, after issue joined, and before the justice shall proceed to an examination of the testimony, or to inquire into the merits of the cause, either party, on first paying to the justice the jury fees in advance, which shall be taxed against the losing party, may demand that the cause be tried by a jury of six men.

¶ 56. Chapter 89 of the same Revised Statutes related to criminal proceedings in Justices' Courts. Section 10 of this chapter provided:

> After the joining of issue, and before the court shall proceed to an investigation of the merits of the cause, unless the accused shall expressly waive his right to a trial by jury, the court shall direct the sheriff or any constable of the county to make a list in writing, of the names of eighteen inhabitants of the county qualified to serve as jurors in the courts of record of this state, from which list the complainant and accused may each strike out six names.

Section 11 then provided:

> In case the complainant or the accused shall neglect to strike out such names, the court shall direct some suitable, disinterested person, to strike out the names for either or both the parties so neglecting; and upon such names being struck out, the justice

shall issue a venire, directed to the sheriff or any constable of the county, requiring him to summon the six persons whose names shall remain upon such list, to appear before such court at the time and place to be named therein, to make a jury for the trial of such offence.

¶ 57. There can be no mistake about the legislative intent in these statutes, which were approved one year after the Wisconsin Constitution was adopted and carried over from territorial law.

## IV

¶ 58. There is now a well-established methodology for interpreting provisions of the Wisconsin Constitution. "In interpreting a constitutional provision, the court turns to three sources in determining the provision's meaning: the plain meaning of the words in the context used; the constitutional debates and the practices in existence at the time of the writing of the constitution; and the earliest interpretation of the provision by the legislature as manifested in the first law passed following adoption." *Thompson v. Craney*, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996); *State v. Beno*, 116 Wis. 2d 122, 136–37, 341 N.W.2d 668 (1984). Contemporaneous legislative construction of a constitutional provision is entitled to great deference. *Payne v. Racine*, 217 Wis. 550, 558, 259 N.W. 437 (1935); *State ex rel. Pluntz v. Johnson*, 176 Wis. 107, 114–15, 186 N.W. 729 (1922).

¶ 59. In the December 1853 term, the supreme court decided *Norval v. Rice*, 2 Wis. 17, addressing the constitutionality of Section 16 of Chapter 86, which provided for a jury of six men instead of twelve in county court civil cases. The court ruled that the six-person jury violated art. I, § 5, which provided in part:

"The right of trial by jury shall remain inviolate." *Id.* at 19.

¶ 60. The court traced the history of the jury to "before the Norman Conquest." *Id.* at 20. It cited Lord Coke, Crabb's *History of English Law*, Blackstone's *Commentaries*, Professor Woodesson's *Lectures on the Law of England*, Sir Matthew Hale, and Chitty's *Case Law* for the proposition that at common law a jury consisted of twelve men. The court quoted 1 Chitty's C.L. 505 to this effect: "The petit jury when sworn, must consist precisely of twelve, and is never to be either more or less on the trial of the general issue." *Id.* at 21. The court concluded:

> In our view of the provisions of the Revised Statutes concerning County Courts, where they restrict the jury to *six* persons, they conflict with the enjoyment of a constitutional right, secured to every citizen, namely, the right of trial by a jury of *twelve* men; and we therefore hold, that when the defendant in the court below was denied a trial by a jury consisting of twelve men, he was deprived of a right secured to him by the Constitution.

*Id.* at 23.

¶ 61. Basing its decision on language in § 5 of art. I, the court asserted that, "the trial by jury in a court of record which has been enjoyed before the adoption of the Constitution, *remains inviolate*." *Id.* The court thus implied that common law notions of the jury may not be altered by the legislature.

¶ 62. There are several troublesome elements to the *Norval* decision. First, although the court discussed juries in the Wisconsin Territory, conceding that in justice of the peace courts, juries "of six only" were allowed in all cases except "actions of forcible entry and

507

detainment,"[1] it nonetheless attached no significance to the fact that these six-person juries existed in the territory before the adoption of the Wisconsin Constitution, operated for years under the principles of the Northwest Ordinance, and continued as part of state law pursuant to art. XIV, § 2 after the constitution was adopted.

¶ 63. Second, the court made no reference to art. XIV, § 13, which gives the legislature power to change the common law. It disregarded the power of the legislature to change common law until it addressed a law it liked, the 1850 act providing for the protection of married women, an act that overturned a common law rule that "marriage deprived the wife of the right to maintain an action *in her own name alone*, upon contracts

---

[1] Justice of the peace courts had jurisdiction in criminal cases and tried minor crimes pursuant to Chapter 89 of the Revised Statutes of Wisconsin (1849). Section 2 of this chapter provided: "Justices of the peace shall have power to hold a court, subject to the provisions hereinafter contained, to hear, try and determine all charges for offences arising within their respective counties, where jurisdiction is conferred upon them by any law of this State."

Section 8 of Chapter 89 further provided: "If the plea of the accused be not guilty, and no jury be demanded by him, the said court shall proceed to try such issue, and to determine the same according to the evidence which may be produced against and in behalf of such accused."

Section 28 of Chapter 89 named specific minor crimes presented before justices of the peace:

No assault, battery or affray, shall be indictable, but all such offences shall be prosecuted and determined in a summary manner, by complaint made before a justice of the peace, and on conviction thereof, the offender may be punished by fine not less than five dollars, nor more than fifty dollars, according to the nature of the offense.

made by her before marriage." *Id.* at 24. The court recognized that law as valid.[2] In short, the court not only discounted the practices in existence at the time of the writing of the constitution but also disavowed the earliest interpretation of the constitution in the first laws passed following adoption.

¶ 64. Third, the court failed to discuss the presumption of constitutionality.[3] The court simply observed that it was "a delicate matter for courts to declare a legislative enactment unconstitutional." *Id.* at 23.

---

[2] In retrospect, it is quite evident that we have changed many elements of the common law with respect to juries. Modern juries do not consist of twelve *men*, contrary to common law. Persons with criminal convictions are not automatically disqualified as prospective jurors, contrary to common law. See *State v. Mendoza*, 227 Wis. 2d 838, 851 n.7, 596 N.W.2d 736 (1999). In 1859, this court recognized that the legislature could change the manner of selecting juries. *Perry v. State*, 9 Wis. 15 (1859). The court said:

> [W]e think the manner of designating the persons who are to act as jurors. . .is clearly within the control of the legislature; and that the constitutional right of every accused person to a jury trial, is not impaired merely because those persons have been selected instead of drawn. Or, in other words, we think that in order to preserve the right of trial by jury, it is not necessary to preserve any particular mode of designating jurors, even though such mode may have been in force at the time of the adoption of the constitutional provision. All that the right includes, is a fair and impartial jury, not the particular mode of designating it.

9 Wis. at 17–18.

[3] As this court observed in *Association. of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 557, 544 N.W.2d 888 (1996), "A statute is presumed to be constitutional. . . .When attacking the constitutionality of a statute, the contesting party must prove the unconstitutionality of the statute beyond a reasonable doubt."

V

¶ 65. In *Hansford,* this court relied heavily on *Norval.* 219 Wis. 2d at 237–39. It noted that Edward V. Whiton, Chief Justice of the three-member supreme court that decided *Norval* in 1853, was a delegate at the 1847–48 convention that redrafted the Wisconsin Constitution.[4] *Id.* at 239. *Hansford* did not mention, however, that five members of the legislature that passed the six-person jury bills—Senators Warren Chase and George W. Lakin and Representatives Paul Crandall, James Fagan, and James D. Reymert—were also members of the 1847–48 convention.

¶ 66. The *Hansford* opinion cites *Bennett v. State,* 57 Wis. 69, 75, 14 N.W. 912 (1883), *Jennings v. State,* 134 Wis. 307, 309, 114 N.W. 492 (1908), and *State ex rel. Sauk County Dist. Attorney v. Gollmar,* 32 Wis. 2d 406, 409, 145 N.W.2d 670 (1966), for the proposition that a criminal defendant's right to a trial by jury as guaranteed by art. I, § 7 of the Wisconsin Con-

---

[4] Edward V. Whiton served in the Territorial Legislature. In 1839, he was commissioned to compile all the laws passed by the legislature at the 1838–39 session. Statutes of the Territory of Wisconsin (1839). Whiton recorded "An Act concerning justices of the peace." *Id.* at 319. Section 2 of Article Sixth of the Act reads in part:

> In every action to be brought, by virtue of this act, it shall be lawful for either of the parties to the suit, or the attorney of either of them, after issue joined, (and before the court shall proceed to inquire into the merits of the cause,) to demand of said court, that said action be tried by a jury of six jurors, on first paying to the justice the jury fees in advance, which shall be taxed against the losing party, and upon such demand, the justice shall direct the sheriff or any constable of the county who may be present, or if no officer be present, the justice may appoint a suitable person to perform the duties required by this section.

*Id.* at 327.

stitution "is the right to a jury of 12 persons." *Hansford*, 219 Wis. 2d at 241. Each of these cases uses *Norval*, a civil case that relied on a different section of the constitution, as precedent. Moreover, *Bennett* involved a first-degree murder felony, not a misdemeanor, so that it is not directly on point.

¶ 67. *Hansford* also invoked *State v. Lockwood*, 43 Wis. 403, 405 (1877), which observed that: "The right of trial by jury. . .is secured by the constitution, upon a principle of public policy, *and cannot be waived*" (emphasis added). The emphasized language, not quoted in *Hansford*, is in direct contradiction to the holding in this case. It also directly contradicted art. I, § 5, which provided that "a jury trial may be waived by the parties in all cases," as well as Chapter 89, Section 10 Revised Statutes (1849), which authorized waiver in a criminal case.

¶ 68. This court is not bound by common law principles that the legislature was empowered to change and did change. We are not shackled to precedent that is plainly mistaken, particularly when that precedent disregards and disrespects a coequal branch of government that has clearly and constitutionally expressed its intent. If *Norval* is viewed as good law, we are likely to see additional challenges to Wisconsin statutes providing for juries of less than twelve.

VI

¶ 69. Wisconsin joined the Union on May 29, 1848, as the 30th state. 1999–2000 *Wisconsin Blue Book* at 204. Twenty-nine states preceded Wisconsin. In several of these states, early court decisions interpreted the right of trial by jury to require twelve jurors. *Vaughn v. Scade*, 30 Mo. 600 (1860); *Opinion of the Justices*, 41 N.H. 550 (1860); *Cruger v. Hudson River*

*R.R. Co.*, 2 Kern 190 (N.Y. Ct. App. 1854); *Work v. State*, 2 Ohio St. 296, 59 Am. Dec. 671 (1853); *State v. Cox*, 8 Ark. 436 (1848).

¶ 70. In *Williams v. Florida*, 399 U.S. 78, 86 (1970), however, the Supreme Court held that the Sixth Amendment right to an impartial jury did not explicitly codify a twelve-member jury as a constitutional requirement. The Court said: "We hold that the 12-man panel is not a necessary ingredient of 'trial by jury,' and that [Florida's] refusal to impanel more than the six members provided for by Florida law did not violate petitioner's Sixth Amendment rights as applied to the States through the Fourteenth."

¶ 71. There are now juries of less than twelve in a number of the 29 states that preceded Wisconsin into the Union. *See Brown v. State*, 684 N.E.2d 529 (Ind. App. 1997); *Carter v. State*, 702 S.W.2d 774 (Tex. App. 1986); *O'Brien v. State*, 422 N.E.2d 1266 (Ind. App. 1981); *State ex rel. Columbus v. Boyland*, 391 N.E.2d 324 (Ohio 1979); *Williams v. State*, 224 So. 2d 406 (Fla. App. 1969). These juries have been effected without modifying the state constitutions.

¶ 72. I freely acknowledge that strong arguments can be made in behalf of twelve-member juries. These arguments may be stronger and better than the arguments for six-member juries. But public policy was not the issue in *Hansford*. The issue in *Hansford* was whether the Wisconsin Constitution deprives the Wisconsin legislature of the power to mandate jury trials of six persons in misdemeanor cases—beyond a reasonable doubt. In answering this question, our court erred. I believe this court should have upheld the 1996 legislation.

¶ 73. As the majority opinion correctly states at ¶ 17: "Huebner has not lost his right to a jury trial." His

right to a jury trial remained inviolate. Huebner received a fair trial by a constitutional jury in a misdemeanor case. Consequently, I concur in the judgment to affirm his conviction.

¶ 74. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. On June 21, 1996, the legislature mandated the use of a six-person jury in misdemeanor actions commenced after that date.[1] On June 19, 1998, this court declared the law mandating a six-person jury in misdemeanor cases unconstitutional. *State v. Hansford*, 219 Wis. 2d 226, 243, 580 N.W.2d 171 (1998).

¶ 75. When this court declares a state law unconstitutional, the law is unconstitutional *ab initio*, that is, the law is null from the date it was adopted.[2] Thus,

---

[1] 1995 Wis. Act 427; Wis. Stat. § 756.096(3)(am)(1995–96).

[2] "An unconstitutional act of the Legislature is not a law; it confers no rights, it imposes no penalties, it affords no protection, and is not operative; and in legal contemplation it has no existence." *State ex rel. Kleist v. Donald*, 164 Wis. 545, 552–53, 160 N.W. 1067 (1917) (quoted with approval in *Hunter v. School Dist. of Gale-Ettrick-Trempealeau*, 97 Wis. 2d 435, 444, 293 N.W.2d 515 (1980)).

*See also Berlowitz v. Roach*, 252 Wis. 61, 64, 30 N.W.2d 256 (1947) (quoting *Kleist*); *State ex rel. Martin v. Zimmerman*, 233 Wis. 16, 288 N.W. 454, 457 (1939) ("with respect to an unconstitutional law. . .the matter stands as if the law had not been passed"); *John F. Jelke Co. v. Hill*, 208 Wis. 650, 661, 242 N.W. 550 (1932) (an unconstitutional act is not a law); *Bonnett v. Vallier*, 136 Wis. 193, 200, 116 N.W. 885 (1908) (an unconstitutional legislative enactment is no law at all). *Compare Butzlaff v. Van Der Geest & Sons, Inc.*, 115 Wis. 2d 535, 538–540, 340 N.W:2d 742 (Ct. App. 1983) (recognizing the *Kleist* rule but holding that private persons should not be held liable for acting

the law mandating a six-person jury in misdemeanor cases was null from the date it was enacted and should have no impact on this court's decision in the present case.[3]

in good faith pursuant to statutes that are later declared unconstitutional).

*See also Shirley v. Getty Oil Co.*, 367 So. 2d 1388, 1391 (Ala. 1979) ("[i]f the act is unconstitutional, it was void from the beginning"); *Martinez v. Scanlan*, 582 So. 2d 1167, 1174 (Fla. 1991) ("a penal statute declared unconstitutional is inoperative from the time of enactment"); *People v. Manuel*, 446 N.E.2d 240, 244–245 (Ill. 1983) ("[w]hen a statute is held unconstitutional in its entirety, it is void ab initio"); *State ex rel. Stenberg v. Murphy*, 527 N.W.2d 185, 192 (Neb. 1995) ("an unconstitutional statute is a nullity, void from its enactment"); *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988) ("unconstitutional statute is void from inception," discussing cases); *Fairmont v. Pitrolo Pontiac-Cadillac Co.*, 308 S.E.2d 527, 534 (W.Va. 1983) ("when a statute or ordinance is declared unconstitutional, it is inoperative, as if it had never been passed," citing cases).

[3] Cases have recognized a tension between the principle that unconstitutional statutes are void *ab initio* and the principle that challenges to prosecutions under laws later declared unconstitutional can be forfeited if a defendant failed to assert the challenge at trial. For discussions of this tension, *see State v. Thomas*, 128 Wis. 2d 93, 97–101, 381 N.W.2d 567 (Ct. App. 1985); *State ex rel. Skinkis v. Treffert*, 90 Wis. 2d 528, 531–38, 280 N.W.2d 316 (Ct. App. 1978).

Cases attempt to resolve this tension by recognizing that facial constitutional challenges to criminal convictions cannot be forfeited. *See, e.g., In re F.R.W.*, 61 Wis. 2d 193, 200, 212 N.W.2d 130 (1973) (facial challenge to statute's constitutionality was challenge to court's jurisdiction and not forfeited when not raised at trial) (quoting *State ex rel. Comrs. of Public Lands v. Anderson*, 56 Wis. 2d 666, 672, 203 N.W.2d 84, 87 (1973)); *State v. Benzel*, 220 Wis. 2d 588, 592, 583 N.W.2d 434 (Ct. App. 1998) (court cannot acquire jurisdiction to try a person for an act

¶ 76. The defendant in this case was arrested on November 16, 1997, and tried by a six-person jury on February 17 and 18, 1998, when no statute was "in existence" authorizing a six-person jury. Therefore, the present case cannot be distinguished from this court's recent decision in *State v. Wingo*[4] and the court of appeals' decision in *State v. Cooley*.[5]

¶ 77. In *Wingo* the conviction was reversed when a defendant was tried and convicted under the six-person jury statute even though the defendant did not object to the six-person jury. In *Wingo,* as in the present case, no statute was in existence at the time of trial authorizing a six-person jury. But in *Wingo* the action was commenced prior to the effective date of the unconstitutional statute authorizing a six-person jury, while in the present case the six-person jury statute

made criminal only by an unconstitutional law, even when defendant had not objected at trial on this ground); *State v. McCoy*, 139 Wis. 2d 291, 295 n.1, 407 N.W.2d 319 (Ct. App. 1987) (a challenge to the constitutionality of a statute on grounds of vagueness relates to a court's subject matter jurisdiction and is not forfeited by failure to raise issue at trial); *State v. Olson*, 127 Wis. 2d 412, 418–420, 380 N.W.2d 375 (Ct. App. 1985) (facial challenges to statute's constitutionality were jurisdictional and not forfeited when not raised at trial).

A constitutional challenge to the statute mandating six-person rather than twelve-person juries in misdemeanor cases can be viewed as a facial challenge to the statute and thus is not forfeited by failure to having objected at trial.

For a discussion of the reach of a judgment of unconstitutionality, *see* Laurence H. Tribe, *American Constitutional Law* § 3.3 (2d ed. 1988).

[4] *State v. Wingo*, 2000 WI 31, 233 Wis. 2d 647, 609 N.W.2d 162.

[5] *State v. Cooley*, 105 Wis. 2d 642, 315 N.W.2d 369 (Ct. App. 1981).

was not "in existence" because it was later declared unconstitutional.

¶ 78. However, in both *Wingo* and in the present case, the defendant failed to object to the six-person jury at trial. In *Wingo* we held that the defendant did not waive his right to trial by a twelve-person jury and did not forfeit his right to address the issue on appeal. The defendant in this case is in the same position as the defendant in *Wingo*. Therefore the *Wingo* case governs the present case.

¶ 79. In *Cooley*,[6] the other case that is indistinguishable from the present case, the defense counsel, not the defendant, agreed to proceed with an eleven-person jury. The court of appeals concluded that because the defendant had not personally waived the right to a jury of fewer than twelve people, the conviction must be reversed.

¶ 80. In *Wingo* and in this case, as in *Cooley*, no statutory authorization existed to try a defendant with a jury of fewer than twelve people. None of these defendants agreed personally to a trial by a jury of fewer than twelve people. Thus the result in this case, just as in *Wingo* and *Cooley*, should be a reversal of the defendant's conviction and a remand for a new trial.

II

¶ 81. Regardless of whether I choose to rely on the principle that the law mandating six-person jury trials in misdemeanor cases was void *ab initio*, I would still dissent from the majority's holding that the defendant forfeited his right to a twelve-person jury when he did not object to the six-person jury at trial.

---

[6] *State v. Cooley*, 105 Wis. 2d 642, 315 N.W.2d 369 (Ct. App. 1981).

¶ 82. Before I explain my dissent, I want to express my agreement with the following principles set forth in the majority opinion:

- The right to a trial by jury in Wisconsin is a "fundamental right" that "cannot be forfeited by mere failure to object [at trial]." Majority op. at ¶ 14.[7]

- Some constitutional rights may be forfeited on appeal if they are not raised at trial; others will not be forfeited by mere failure to object at trial.[8] Majority op. at ¶¶ 14–15.

- The rule of forfeiture is important to the administration of the judicial system. Majority op. at ¶ 14. United States Supreme Court Justice Antonin Scalia has noted that the rule of forfeiture reflects the principle that a trial is

[7] *See State v. Livingston*, 159 Wis. 2d 561, 569–570, 464 N.W.2d 839 (1991) (defendant must personally and affirmatively waive his right to jury trial; mere failure to object does not forfeit the right); *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 895 n.2 (1991) (Scalia, J., concurring) (right to trial by jury cannot be forfeited by mere failure to object at trial; right to counsel cannot be forfeited by mere failure to object at trial).

[8] As the majority opinion notes, majority op. at ¶ 11, n.2, this case presents a question of the "forfeiture rule" rather than the "waiver rule." I agree with the majority opinion that Wisconsin opinions tend to use the word "waiver" when the word "forfeiture" is more appropriate.

For the distinction between "waiver" (the intentional relinquishment or abandonment of a known right or privilege) and "forfeiture" (the failure to assert timely a right to preserve an issue for appellate review), *see, e.g., Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 895 n.2 (1991) (Scalia, J., concurring); *United States v. Olano*, 507 U.S. 725, 731–733 (1993).

"the main event," and not simply a "tryout on the road to appellate review." *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring) (internal quotation marks omitted).

- This court may exercise its discretion to reach an issue that a party has forfeited. Majority op. at ¶¶ 27–28.

¶ 83. In this case the defendant did raise his objection before the circuit court, in a motion for post-conviction relief. This procedure gave the circuit court the opportunity to consider the issue. Regardless of this submission to the circuit court, I conclude that in Wisconsin the right to a trial by a jury of twelve persons cannot be forfeited by a defendant's mere failure to object at trial to a lesser number of persons on the jury. My reasoning is as follows:

- A six-person jury trial in a criminal case is not a "trial by jury" as that phrase has been historically understood in Wisconsin. In *State v. Hansford*, 219 Wis. 2d 226, 241, 580 N.W.2d 171 (1998), the court equated trial by jury to a jury of twelve persons. According to *Hansford*, "a criminal defendant's right to a trial by jury as guaranteed by art. I, § 7 of the Wisconsin Constitution, is the right to a jury of twelve persons."[9] This court declined in *Hansford* to adopt the U.S. Supreme Court's reasoning "that the twelve-person requirement for a jury trial is not 'an indispensable component of the

---

[9] *State v. Hansford*, 219 Wis. 2d 226, 241–42, 580 N.W.2d 171 (1998).

Sixth Amendment.' "[10] Rather this court declared in *Hansford* that a twelve-person jury is an indispensable component of the state constitutional guarantee of trial by jury. Thus the *Hansford* court unanimously declared that the legislatively mandated six-person jury was unconstitutional. When a defendant is not afforded the right to a jury of twelve people, as guaranteed by art. I, § 7 of the Wisconsin Constitution, the conviction must be reversed.[11]

- To waive a trial by jury a defendant must personally state in open court on the record, or in writing, that he or she waives a jury trial.[12] "Neither counsel nor the court nor any other entity can act in any way or to any degree so as to waive on the defendant's behalf his right to trial by jury."[13] If a defendant personally fails to waive a jury trial, he or she does not forfeit the right to raise the issue on appeal.

- The same rules that apply to waiving a trial by jury apply to waiving a trial by a

---

[10] *State v. Hansford*, 219 Wis. 2d 226, 241–42, 580 N.W.2d 171 (1998) (quoting *Williams v. Florida*, 399 U.S. 78, 100 (1970)).

[11] *State v. Hansford*, 219 Wis. 2d 226, 243, 580 N.W.2d 171 (1998).

[12] Wisconsin Stat. § 972.02 (1997–98) provides:

(1) Except as otherwise provided in this chapter, criminal cases shall be tried by a jury selected as prescribed in s. 805.08, unless the defendant waives a jury in writing or by statement in open court or under s. 967.08(2)(b), on the record, with the approval of the court and the consent of the state.

[13] *State v. Livingston*, 159 Wis. 2d 561, 569, 464 N.W.2d 839 (1991) (defendant must personally and affirmatively waive his right to a jury trial).

jury of fewer than twelve people.[14] In other words, a defendant must personally state on the record his or her willingness to be tried by a jury of fewer than twelve people.[15] In this case the defendant did not agree personally on the record to be tried by fewer than twelve people. Thus he did not waive his right to a twelve-person jury and he could not forfeit the issue on appeal.

- The size of a jury can affect the fact-finding process. Accordingly I conclude that a defendant should not forfeit the opportunity to raise the issue on appeal. In declining to adopt *Williams v. Florida*, 399 U.S. 78 (1970), in the *Hansford* decision, the court implicitly rejected the position in *Williams* that a jury of twelve people is not significantly different than a jury with fewer people. There are good reasons for rejecting this position. *See Brown v. Louisiana*, 447 U.S. 323, 332 (1980) ("a decline in the jury size leads to less accurate factfinding and a greater risk of convicting an innocent person") (quoted by *State v. Ledger*, 175 Wis. 2d 116, 127, 499 N.W.2d 198 (Ct. App. 1993)); *Ballew v. Georgia*, 435 U.S. 223,

---

[14] *State v. Cooley*, 105 Wis. 2d 642, 645–46, 315 N.W.2d 369 (Ct. App. 1981).

[15] *State v. Cooley*, 105 Wis. 2d 642, 645–46, 315 N.W.2d 369 (Ct. App. 1981). *See also State v. Ledger*, 175 Wis. 2d 116, 127–28, 499 N.W.2d 198 (Ct. App. 1993) (permitting a thirteen-person jury when the defendant personally agreed).

234 (1978) ("[s]tatistical studies suggest that the risk of convicting an innocent person. . .rises as the size of the jury diminishes"). *Hansford* and these other cases thus contradict the majority opinion's assertion that a six-person jury "does not affect the basic accuracy of the factfinding process at trial." Majority op. at ¶ 31 (internal citations omitted).

- Recent decisions, including *State v. Wingo*, 2000 WI 31, 233 Wis. 2d 647, 609 N.W.2d 162, and *State v. Cooley*, 105 Wis. 2d 642, 315 N.W.2d 369 (Ct. App. 1991), discussed above, support my dissent. The majority opinion fails in its attempt to distinguish *State v. Cooley*, 105 Wis. 2d 642, from this case. The majority opinion posits that *Cooley* was based on the fact that an eleven-person jury was not authorized by any statute. Majority op. at ¶ 23. Nothing in *Cooley* suggests that the decision rests on the lack of statutory authorization for an eleven-person jury.[16] Rather, relying on decisions of this court,[17] the court of appeals con-

---

[16] *See State v. Ledger*, 175 Wis. 2d 116, 127–28, 499 N.W.2d 198 (Ct. App. 1993) (the number of jurors need not be established by statute to be constitutional; trial by thirteen jurors did not justify reversal of the conviction when the defendant personally agreed to that number of jurors).

[17] *State ex rel. Sauk County District Attorney v. Gollmar*, 32 Wis. 2d 406, 409, 145 N.W.2d 670 (1966); *Krueger v. State*, 84 Wis. 2d 272, 281, 267 N.W.2d 602, cert. denied, 439 U.S. 874 (1978); *State v. Moore*, 97 Wis. 2d 669, 671, 294 N.W.2d 551 (Ct. App. 1980).

cluded that "the procedural safeguards for waiver of trial by jury apply equally to waiver of a full twelve-person jury."[18] This court has expressed approval of the *Cooley* decision.[19] The majority opinion attempts to explain away the *Cooley* decision by stating that when "the trial court itself has induced a defendant to give up his statutory and constitutional right to a twelve-member jury, the defendant's waiver must be made personally and expressly." Majority op. at ¶ 24. In the present case both the Wisconsin legislature (by enacting an unconstitutional law) and the circuit court (by drawing six-person juries in compliance with the unconstitutional law) induced the defendant to give up his statutory and constitutional right to a twelve-person jury.

¶ 84. Because a jury in this state is, as a matter of law, composed of twelve people in criminal cases, and because the right to trial by a twelve-person jury is a right that cannot be waived except by a defendant's personal oral or written waiver on the record, I conclude that the right to trial by a twelve-person jury cannot be forfeited by the defendant's mere failure to object at trial to a jury of fewer than twelve people.

¶ 85. For the reasons stated, I dissent.

---

[18] *State v. Cooley*, 105 Wis. 2d 645–46.

[19] *See State v. Wingo*, 2000 WI 31, ¶ 16, 233 Wis. 2d 647, 609 N.W.2d 162 (citing *Cooley* with approval); *State v. Livingston*, 159 Wis. 2d 561, 569, 464 N.W.2d 839 (1991) (same).

¶ 86. I am authorized to state that Justices ANN WALSH BRADLEY and DIANE S. SYKES join this dissent.