HAGEDORN, J. (dissenting).
¶ 42 The Majority gives Arline a mulligan. Instead of holding Arline to her obligation to timely raise substantive objections, the Majority blames the circuit court for failing to let Arline make the very arguments she should have already made. Even more, the Majority decides this case on grounds neither raised nor developed in the *777 circuit court and only minimally developed before us. This case is surely a procedural mess. But the fault lies with the parties, not with the circuit court. From my read, the circuit court's decisions were reasonable and resolved the factual and legal disputes in the case. And in accordance with our long-standing practice, I would treat Arline's only developed argument as forfeited.
¶ 43 The Majority gets most of the facts right, but misreads the nature of Arline's sole objection to the amended report and the circuit court's resolution of that objection. Other than a complaint about not being copied on Kathryn's correspondence with the referee-the significance of which was never developed-Arline's lone objection to the amended report was as follows: "[T]he report reflects, that both [Kathryn's counsel] and the undersigned are holding certain funds in Trust on behalf of our respective clients, which information is simply not true; that is, the funds 'on hand' for division are confined to the current value of the residence and nothing more." The only question, then, was whether the funds that were thought to be held in trust remained in trust subject to division.
¶ 44 This precise dispute was settled in the court's proceedings on January 20 and January 27, 2016. During the January 20 hearing, the court discovered that the parties distributed the funds that it had ordered held in trust. The order specifically provided the "funds shall continue to be held in such trust accounts, to be disbursed as later may be agreed upon in writing by the parties or ordered by the Court." Upon being asked for an explanation for the disbursal, Arline's attorney claimed the parties had reached an agreement to disburse the funds during mediation. The court demanded documentation of an agreement to release the funds to Arline prior to the next hearing.
*778 By my read, Arline's whole objection to the referee's inclusion of the trust funds in his amended report hinged upon whether those funds had been disbursed pursuant to an agreement between the parties.
¶ 45 I disagree with the Majority's suggestion that the circuit court "recognized" Arline "had no real opportunity to provide factual information before the referee amended his report," and "this was a separate issue that required a separate order sending the parties back to the referee" for a do-over. Majority, ¶ 37 n.12. In fact, the court grilled Arline's counsel about the alleged agreement and admonished that counsel had "better find" the documentation to support the alleged agreement to disburse the funds. The court then instructed Arline's counsel to submit those documents to the referee to "see if he changes his opinion." Later in the same hearing (a mere two pages later in the transcript), the circuit court ordered the parties to present documentation of the alleged agreement to the circuit court as *48 well prior to the next hearing. The court did not assert or imply that Arline lacked the "opportunity to provide factual information" to the referee, nor did it intimate that there were issues beyond the alleged agreement that would have any bearing on the allocation of the funds.
¶ 46 During the January 27 hearing, the court directly addressed the issue of whether the trust funds were distributed to Arline pursuant to an agreement between the parties. Arline was allowed to present evidence-which she did by having the mediator testify. The circuit court heard the testimony, considered written documentation, and questioned counsel for both sides. It was during this hearing that the court determined-reasonably I might add-that there was nothing left to submit back to the referee at all. The *779 facts were clear in the court's view. The court was unpersuaded by Arline's evidence that the parties reached an agreement to disburse half of the funds to Arline.[1] Thus, the court reasonably concluded that these funds were subject to distribution as the referee had determined.[2] And since Arline never suggested that the 97/3 split (based on Arline's and Kathryn's relative contributions to maintaining the property) was inequitable on any other grounds, there was nothing left to resolve-other than to figure out how Arline was going to pay Kathryn the money she was owed.
¶ 47 The Majority characterizes this as not letting Arline make her case regarding the proper division of the funds. See Majority, ¶¶ 32, 35. It implies that neither party addressed the allocation issue because the circuit court previously recommitted the matter back to the referee. See Majority, ¶ 37 n.12. I do not see it that way. The court found, after the hearings, that there was no proper authorization to release the funds to Arline in the first place. They should have remained in trust-and therefore been *780 subject to division. That is the only thing Arline objected to, and that was the only articulated basis for Arline's objection to the allocation issue. Having heard the evidence and made the appropriate findings based on Arline's single objection, referring the matter back to the referee for a second round of submissions on the same question was no longer necessary. The court reasonably determined that recommitment would have been pointless. The circuit court was well within its authority to rescind its previous order that the matter should be referred back to the referee when it resolved the very issue it was going to refer.
¶ 48 Having concluded that, contra the Majority, the circuit court did address Arline's only objection to the referee's report, the Majority has one additional ground supporting its decision. The Majority asserts that the circuit court erroneously exercised its discretion because it "adopted the report without reviewing the evidence considered or to be considered by the referee." Majority, ¶ 42. Nowhere, however, did Arline object to the referee's report on *49 the grounds that the referee failed to file the transcripts and evidence with the circuit court, or any other procedural defects. Perhaps she should have made that objection, but she did not.
¶ 49 It is the rare case indeed where we give parties another chance on appeal to raise brand new arguments. See State v. Caban , 210 Wis.2d 597, 604, 563 N.W.2d 501 (1997). "The waiver rule is not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice." State v. Huebner , 2000 WI 59, ¶ 11, 235 Wis.2d 486, 611 N.W.2d 727. Requiring a party to raise all objections before the circuit court "allows the trial court to correct or avoid the alleged error in the first place, *781 eliminating the need for appeal." Id. , ¶ 12. The rule provides notice to both parties and the circuit court and a fair opportunity to address the issue. Id. The rule additionally "encourages attorneys to diligently prepare for and conduct trials" and "prevents attorneys from 'sandbagging' errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." Id. (citation omitted). The party raising an objection on appeal bears the burden to demonstrate (by reference to the record) that the issue was brought to the attention of the circuit court. Caban , 210 Wis.2d at 604, 563 N.W.2d 501.
¶ 50 We should not take up the procedural arguments Arline failed to raise before the circuit court-arguments she just barely develops on appeal. Any error (assuming it was error) could have been easily corrected by the circuit court had it been raised in her objection to the referee's report during the January 20 status hearing, during the January 27 continued status hearing, or even in any of the subsequent hearings and filings. This case is a prime example of why we apply forfeiture to arguments not raised in the circuit court. I see no reason to depart from that principle here.
¶ 51 Even beyond Arline's complete failure to raise this below, the Majority now seeks to authoritatively construe a complex statute based on theories not at all developed before us. The Majority suggests that circuit courts must, under WIS. STAT. § 805.06(5)(a), order the transcripts, evidence, and exhibits the referee relied on, and concludes this is inherent in the circuit court's statutory obligation to accept the findings unless clearly erroneous. Majority, ¶¶ 36-39. That is possible. But it certainly is not the only reading of the statute, and it is done entirely without the benefit of briefing.
*782 ¶ 52 Other alternative readings exist. For example, WIS. STAT. § 805.06(5)(a) says that the transcript and evidence and exhibits shall be filed "unless otherwise directed by the order of reference." This suggests the court can validly order that the referee need not file the transcript, evidence, and exhibits. And, having done so, it still must accept the findings of fact unless clearly erroneous in an action to be tried by the court. See § 805.06(5)(b). The logical inference, then, is that the statute does not require the circuit court to have these documents to validly exercise its discretion, nor do we necessarily need it to review that exercise of discretion, as the Majority holds. See Majority, ¶¶ 36-39. I do not understand why the referee's failure to comply with the court's own order of reference asking for certain attachments to the referee's proposed findings would deprive the court of the power to nonetheless accept the referee's report-especially where the parties did not object on this basis. It may be that the statute contemplates that objections to the referee's report, along with the supporting evidence for those objections, should be raised by *50 the parties, rather than putting the onus on the circuit court to verify for itself that every fact found by the referee is reasonably supported.
¶ 53 To be clear, I am not attempting to authoritatively read the statute as the Majority is doing. I am merely pointing out that the Majority's reading is not obvious. The complex statutory issues involved underscore why we should not relieve Arline of her obligation to raise these issues in the circuit court first, and her obligation to raise coherent, developed arguments before this court. Without adverse and adequate advocacy to guide us, I cannot join the Majority's efforts to raise, develop, and now publish authoritative propositions *783 of law on issues not even minimally developed before us or the circuit court.
¶ 54 In short, I see no error in the circuit court's discretionary determination to adopt the referee's report. And Arline's newfound procedural objections are too little too late. I would affirm.

Both parties had received the money from their respective attorney's trust accounts. Although the court expressed skepticism about whether the documentation presented by Kathryn satisfied the court's order, it never squarely addressed whether Kathryn's attorney had violated the court's order by disbursing the trust funds. Nor did Arline dispute that Kathryn was entitled to the part of the trust funds she had received.

The Majority also intimates, without saying as much, that the circuit court improperly relied on facts from the prior divorce action. Majority, ¶¶ 34, 37 n.12 (claiming the court found the 97/3 allocation equitable "based on the court's recollection of the divorce proceeding"). I disagree. The divorce proceeding came up, but not in a significant way. The circuit court touched on it to help contextualize the situation, and none of its assertions were challenged by the parties.