COURT OF APPEALS
DECISION
DATED AND FILED

September 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP644-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2019CT189**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

 V.

TODD W. VAUGHAN,

 DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waupaca County: RAYMOND S. HUBER, Judge. *Affirmed*.

¶1 NASHOLD, J.[1] Todd W. Vaughan appeals a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration, as a second offense. Vaughan argues that the traffic stop was unsupported by

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

reasonable suspicion because law enforcement was acting on an uncorroborated anonymous tip. I disagree and conclude that, under the facts of this case, the tip was sufficiently reliable and that the investigatory stop therefore satisfied constitutional requirements. Accordingly, I affirm.

## BACKGROUND

¶2 A Waupaca County Sheriff's Department deputy pulled over and arrested Vaughan for driving while under the influence. It is undisputed that, prior to the stop, the deputy did not observe any signs of impaired driving and that the stop was based solely on the tip of an anonymous 9-1-1 caller who reported, among other details, that Vaughan was driving while intoxicated. Vaughan was charged with operating a motor vehicle while intoxicated and operating a motor vehicle with a prohibited alcohol concentration, as second offenses. *See* WIS. STAT. § 346.63(1)(a), (b). Vaughan brought a motion to suppress, arguing that the deputy lacked reasonable suspicion because the stop was based solely on an uncorroborated anonymous tip. *See State v. Williams*, 2001 WI 21, ¶31, 241 Wis. 2d 631, 623 N.W.2d 106. Following a suppression hearing, the circuit court denied the motion. Vaughan pled no contest to operating a motor vehicle with a prohibited alcohol concentration, as a second offense, and he now appeals. Additional relevant facts are discussed below.

## DISCUSSION

*I. Principles of Law and Standard of Review*

¶3 A traffic stop is a seizure within the meaning of the United States and Wisconsin Constitutions and must therefore be supported by reasonable suspicion. *State v. Floyd*, 2017 WI 78, ¶¶19-20, 377 Wis. 2d 394, 898 N.W.2d

2

560; ***State v. VanBeek***, 2021 WI 51, ¶27, 397 Wis. 2d 311, 960 N.W.2d 32; *see* U.S. CONST. amend. IV; WIS. CONST. art. I, § 11. "An officer has reasonable suspicion when, at the time of the stop, he or she possesses specific and articulable facts which would warrant a reasonable belief that criminal activity [is or] was afoot." ***VanBeek***, 397 Wis. 2d 311, ¶28 (alteration in original; internal quotation marks and quoted source omitted); *see* WIS. STAT. § 968.24 (codifying this standard). Whether reasonable suspicion exists depends on the totality of the circumstances, an inquiry that takes into account both the quantity and the quality of the information known at the time of the stop. ***Williams***, 241 Wis. 2d 631, ¶22.

¶4 When, as here, reasonable suspicion is based solely on an anonymous tip, the tip must exhibit "sufficient indicia of reliability," ***id.***, ¶¶26-28, 31, which is provided when the tip is "suitably corroborated," ***id.***, ¶31 (internal quotation marks and quoted source omitted). Factors pertinent to this inquiry include whether law enforcement is able to verify "innocent details" of the anonymous tip, whether the tipster was an eyewitness contemporaneously reporting observed criminal activity, and whether the tip contained predictive information. ***Id.***, ¶¶32-42 (internal quotation marks and quoted source omitted).

¶5 The determination of reasonable suspicion for an investigative stop is a question of constitutional fact. *See* ***id.***, ¶18. We uphold the circuit court's findings of historical fact unless they are clearly erroneous, but we determine de novo whether there was reasonable suspicion for the investigatory stop. ***Id.***

## II. *Application to Vaughan's Appeal*

¶6 After hearing the deputy's testimony and listening to the anonymous 9-1-1 call, the circuit court made the following findings of fact, which Vaughan does not specifically challenge on appeal and which, on this record, are not clearly

erroneous. The deputy did not hear the 9-1-1 call, and the 9-1-1 dispatcher did not relay certain details from that call.[2] The dispatcher relayed that Todd Vaughan was "drunk," was driving a green Mazda Miata convertible, had "just dr[iven] all over" the Cedar Springs Golf Course, had run over a post or pole, and had driven away by himself. The dispatcher told the deputy that Vaughan was traveling towards Marion, with the "direction of travel" "unknown."[3] The deputy would have known that there were two routes to Marion, which is north of the golf course, with one route running through the town of Manawa. The deputy, who was parked near the center of Manawa, saw a vehicle matching the description traveling in a northerly direction, ran the registration, confirmed that the car was Vaughan's, and pulled Vaughan over. The stop took place at the approximate time at which a driver leaving the golf course would have arrived at that location in Manawa. Prior to the stop, the deputy did not observe any signs of impaired driving; nor did she testify that she observed any damage consistent with Vaughan's having hit a post or pole.

¶7      On this set of facts, I conclude that the anonymous tip had "indicia of reliability," in the form of corroboration, sufficient to provide reasonable suspicion to stop Vaughan's vehicle. *Id.*, ¶31 (internal quotation marks and quoted source omitted). Prior to stopping the vehicle, the deputy confirmed that the driver was operating a green Mazda Miata convertible as described by the anonymous caller, and that the vehicle was registered to Vaughan, the person the

---

[2] In analyzing reasonable suspicion, I, like the circuit court, do not consider details that were not relayed to the deputy, as the State does not argue that such details may properly be considered.

[3] In context, it is clear that, as used here, "directions" refers to "route."

caller identified as operating the vehicle. The 9-1-1 dispatcher told the deputy that, according to the caller, Vaughan had "just dr[iven] all over the golf course," supporting a reasonable inference that the caller was an eyewitness to criminal activity. This circumstance is relevant to the "totality of the circumstances" analysis because "the fact that the tip … came from an obviously concerned citizen who was witnessing a crime as [he or] she reported it" tends to support the "observational reliability" of the informant. *See id.*, ¶36 & n.12 (internal quotation marks and quoted source omitted).[4] Moreover, and importantly, the tip provided a predictive detail: that Vaughan was en route to Marion. This prediction was borne out by the deputy's observing Vaughan on one of two possible routes to Marion at the approximate time at which a driver leaving the golf course would reach that location. Thus, the deputy had an objective "means to test the informant's knowledge or credibility." *See id.*, ¶42 (internal quotation marks and quoted source omitted).

¶8 In so concluding, I acknowledge Vaughan's argument that "there is no evidence in the record whatsoever that [the deputy] was able to confirm that the Vaughan vehicle had been involved in any accident or had struck any post." However, the 9-1-1 dispatcher did not tell the deputy that the car was damaged; nor did the dispatcher describe the degree of force with which Vaughan hit the post or pole. Therefore, it does not follow that the apparent lack of damage to Vaughan's vehicle should detract from the "totality" analysis by suggesting that the tip was unreliable.

---

[4] Vaughan questions whether it may be inferred that the anonymous caller herself witnessed this driving. However, even if such an inference may not be reasonably drawn from the evidence, I would reach the same conclusion in this case, based on all of the other facts discussed.

¶9    Vaughan further points to facts that he argues support his position that the 9-1-1 tip was unreliable: the caller remained anonymous, she did not specifically describe how she knew the information conveyed, and the deputy did not observe any signs of impaired driving prior to stopping the vehicle. Under all of the circumstances, however, these facts do not critically undermine the reliability of the tip. Whether a tip is sufficiently corroborated is a totality-of-the-circumstances analysis; here I conclude, as did the circuit court, that in addition to the other corroborating facts discussed above, the prediction of Vaughan's driving direction and location is a particularly "important fact."

¶10    On this last point, Vaughan argues that the location of his car at the time of the stop was not predictive "because any reasonable route from the Cedar Springs Golf Course in a northerly direction will likely take a vehicle through Manawa." But the predictive value of this tip *derives*, in part, from the fact that Vaughan was in fact driving "in a northerly direction," because the information relayed to the deputy included the caller's statement that Vaughan was traveling toward Marion, which is north of the golf course. If, alternatively, Vaughan means to argue that all or most drivers leaving the golf course will travel through Manawa, I note that he did not raise this argument to the circuit court. As is evident from the suppression hearing transcript, the court was personally familiar with the location at issue, including the driving routes from the golf course to Marion, and was therefore in a better position than this court to evaluate this argument had Vaughan raised it. Accordingly, I conclude that this argument has been forfeited and that the principles underlying the forfeiture rule weigh against

my considering this issue for the first time on appeal.[5] *See* ***State v. Huebner***, 2000 WI 59, ¶¶10-11 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727.

¶11    Because the anonymous tip was sufficiently reliable to provide reasonable suspicion to stop Vaughan's car, I conclude that his seizure satisfied the applicable constitutional requirements.  Accordingly, I affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] I note that, even if I were inclined to consider this argument, Vaughan has not provided any factual support for his assertion "that virtually any vehicle leaving Cedar Springs Golf Course is going to be going through Manawa."  Vaughan asks this court to take judicial knowledge of the "location of Wisconsin … towns [and] roadways" by providing a map link to the town of Manawa.  This link, however, merely shows the location of the town.  I am prepared to take judicial notice of the location of Manawa; however, the map provided does not support Vaughan's suggestion that most vehicles leaving the golf course travel through Manawa.