COURT OF APPEALS
DECISION
DATED AND FILED

October 12, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP865-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF170

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANTHONY L. SIMS, III,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: BARBARA W. McCRORY, Judge. *Affirmed.*

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  A jury found Anthony Sims guilty of first degree recklessly endangering safety while armed with a dangerous weapon as a party to a crime, concerning a fight in Beloit in 2019 that escalated when shots were fired and one person was killed and at least two persons were injured by gunfire.  After the circuit court imposed sentence and entered the judgment of conviction, Sims filed a motion for postconviction relief alleging that trial counsel provided constitutionally ineffective assistance for failing to object to certain testimony.  Specifically, Sims argued that counsel was ineffective for failing to object to testimony by a police officer that, in the course of an unrelated investigation several years before the fight at issue, she had obtained information that Sims is identified by a nickname, "Tone," that was used by one of the persons connected with the fight.  The circuit court denied the motion without holding an evidentiary hearing, concluding that Sims did not show that any error in failing to object to the testimony was prejudicial.

¶2     On appeal, Sims argues that he is entitled to a new trial because (1) the officer's testimony violated his right to confront witnesses against him, (2) he did not forfeit his challenge to the testimony on confrontation grounds, and (3) counsel's failure to object to the testimony was plain error.  Alternatively, Sims argues that he is entitled either to a new trial because counsel was constitutionally ineffective for failing to object to the officer's testimony, or to an evidentiary hearing on his ineffective assistance claim.  Separately, Sims argues that he is entitled to the dismissal of this case and the vacation of his conviction because his constitutional right to a speedy trial was violated.

¶3     We conclude that Sims fails to show that the officer's testimony violated his right to confrontation.  Reaching the other issues that Sims raises on appeal, we also conclude that Sims forfeited his challenge to the officer's

testimony on confrontation grounds and fails to show that any error in failing to object to that testimony was obvious so as to constitute plain error. We further conclude that the record conclusively shows that any such error did not prejudice Sims and, therefore, the circuit court properly exercised its discretion in denying his ineffective assistance claim without an evidentiary hearing. Finally, we reject Sims's speedy trial argument because he failed to raise it in his postconviction motion and raises it for the first time on appeal. Accordingly, we affirm.

## BACKGROUND

¶4    Police responded to reports of shots being fired in Beloit at about 9:30 at night on March 11, 2019. At the scene, police found the body of one person who had died from a gunshot wound and two persons who were injured by gunshot wounds. The State charged Sims with one count of first-degree recklessly endangering safety while armed as a party to a crime and one count of felon in possession of a firearm, based on Sims's alleged involvement in this incident.

¶5    Sims filed a motion for a speedy trial on February 28, 2020, and his trial began on April 12, 2021.

¶6    Thirty-four witnesses testified at the four-day jury trial. The following allegations, pertinent to the issues on appeal concerning Sims's trial counsel's failure to object to an officer's testimony connecting Sims with the nickname Tone, are taken from the trial testimony.

¶7    On March 11, 2019, school personnel broke up a fight at a high school in Beloit between S.W. and Douglas Hill, Jr. That evening, three to six men came to S.W.'s house looking for S.W. in order to pursue continuation of the fight between S.W. and Hill. One of these men said through the door, without

revealing himself to people inside, "This is Doug's cousin Tone." "Tone" also said that the men were looking for S.W. because Hill wanted to have a "one-on-one" with S.W.[1] S.W. was not at home when the men came looking for him, and the men returned to a gray minivan. Shortly thereafter, at about 9:30, S.W.'s brothers and friends and the men in the gray minivan supporting Hill gathered near S.W.'s house and in front of Hill's grandparents' house, and S.W. and Hill met and began to fight "one-on-one" in the middle of the street.

¶8        During the fight between S.W. and Hill, two men from the group supporting Hill fired guns at S.W.'s brothers and friends. The first shooter was not identified, and the second man, who was wearing a red jumpsuit, was later identified as Hill's uncle Gregory Carter. When the shooting began, the people present, including Hill and some of the adults supporting him, and S.W. and S.W.'s brothers and friends, ran off in different directions. As people were running away, one of S.W.'s friends fired a gun back at the group supporting Hill. One of S.W.'s brothers was shot and killed, and another of his brothers and one of his friends were shot and injured.

¶9        At 10:07 on the same night, Sims walked into a hospital in Rockford, Illinois, with a gunshot wound in his shoulder. Sims told the responding officer that he had been walking from his house in Rockford to a gas station to purchase cigarettes when he was shot by a passenger in a moving car. Sims said that he flagged down a silver van and the van's driver drove him to the hospital. The hospital's surveillance video showed Sims walking to the hospital

---

[1] We infer from the trial testimony that the phrase "one-on-one" refers to a fight between two people without the use of weapons.

and contained no footage showing a vehicle dropping him off at the hospital. Sims's injury was not consistent with his description of how he was shot. Law enforcement did not receive any report that night of shots being fired, and did not, in talking with residents in the neighborhood, receive any report of any witnesses hearing shots fired, in the area where Sims said he was shot. Rockford is a 20-minute drive away from Beloit, and the time that Sims reported to the hospital in Rockford was consistent with his having been at the fight in Beloit.

¶10    Sims denied being at the fight and shootings in Beloit and told police that he was not with Gregory Carter that day. Two of Sims's cousins told police that Sims was there. One of the cousins generally calls Sims "Tony."

¶11    Officers retrieved fired cartridge casings at the scene of the fight and shootings in Beloit from three separate guns. After the men supporting Hill began shooting at S.W.'s brothers and friends, one of S.W.'s friends shot back while S.W. and his brothers and friends were running away. The location of that friend of S.W. when he fired back was consistent with him shooting Sims.

¶12    An officer subsequently located a gray minivan connected to Sims's family, which had been towed to an unknown location sometime after the fight and shootings.

¶13    Officer Wehmas of the Janesville Police Department testified that she was contacted by the Beloit Police Department in connection with the investigation of this case and asked about identification of Anthony Sims by the nickname "Tone." On direct examination by the prosecutor, Wehmas testified that, in response to that contact, she located reports that she had created in the course of a 2014-2015 criminal investigation that identified Anthony Sims as using or being identified by the name "Tone." On cross examination by defense

5

counsel, Wehmas testified that she "personally observed the nickname Tone in [an] individual's cell phone. The person I interviewed knew Anthony Sims from past drug [deals]." On redirect examination, Wehmas testified that she personally observed a telephone number that Wehmas associated with Sims reflected on this individual's phone and it was stored on the phone under the name "Tone."

¶14 The jury found Sims guilty of one count of first-degree recklessly endangering safety while armed with a dangerous weapon as party to a crime and acquitted Sims of the felon in possession count.

¶15 Sims filed a motion for postconviction relief, alleging that his trial counsel was constitutionally ineffective for failing to object on confrontation grounds to the officer's testimony as to the identification of Sims as Tone. The circuit court denied the motion without holding an evidentiary hearing. This appeal follows.

## DISCUSSION

¶16 Sims appeals the circuit court's denial of his motion for postconviction relief without a hearing. The standard of review of a circuit court's decision denying a motion for postconviction relief without a hearing is well established. A postconviction motion must allege sufficient material facts that, if true, would entitle the defendant to relief. *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. A motion does not entitle a defendant to relief if it contains "only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Id.*, ¶28. Whether a motion suffices to entitle a defendant to relief is a question of law that this court reviews de novo. *State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659; *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶17    If the motion suffices to entitle the defendant to relief, then the circuit court is required to grant a hearing on the motion. *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. If the motion does not suffice to entitle the defendant to relief, then it is within the court's discretion as to whether to hold a hearing. *Id.*; *Allen*, 274 Wis. 2d 568, ¶9. Here, the circuit court determined that Sims's postconviction motion did not entitle him to relief and denied his motion without a hearing.

¶18    In arguing that the circuit erred, Sims raises two sets of issues. The first relates to his right to confrontation and the second relates to his constitutional right to a speedy trial. We address each set of issues in turn.

## I.  Right to Confrontation

¶19    The Sixth Amendment of the United States Constitution provides criminal defendants the right to confront witnesses against them. *Crawford v. Washington*, 541 U.S. 36, 42 (2004). "[A] defendant's right to confrontation is violated if the trial court receives into evidence out-of-court statements by someone who does not testify at the trial if those statements are 'testimonial' and the defendant has not had 'a prior opportunity' to cross-examine the out-of-court declarant." *State v. Mattox*, 2017 WI 9, ¶24, 373 Wis. 2d 122, 890 N.W.2d 256. "If the statements are not testimonial, the Confrontation Clause is not implicated." *Id.* A statement is testimonial if its "primary purpose" was to "gather evidence for [the defendant's] prosecution" or "substitute for testimony in a criminal prosecution." *Id.*, ¶¶32, 33.

### A.    *No Confrontation Right Violation*

¶20    Sims argues that his right to confrontation was violated and trial counsel was constitutionally ineffective for failing to protect that right, when counsel failed to object to the officer's testimony that Sims goes by the nickname Tone.

¶21    Before we address Sims's arguments, we must first determine whether the testimony at issue implicates his Sixth Amendment right to confront the witnesses against him.    Referenced briefly above, the following is a more detailed summary.

¶22    On direct examination, Officer Wehmas testified that she had been asked by the Beloit Police Department in the course of the investigation of this case about reports she had prepared in a prior investigation in which Sims was identified by the nickname Tone.    The questioning and testimony continued as follows.

> Prosecutor:    And was that related to a 2015 investigation of yours?
>
> Wehmas:    Yes, it was a case which originated in 2014 into 2015.
>
> Prosecutor:    So when you were contacted by Beloit PD, you went back and located reports that already existed?
>
> Wehmas:    Yes.
>
> Prosecutor:    And they identified Anthony Sims as Tone?
>
> Wehmas:    Yes.
>
> Prosecutor:    And you were not involved personally at all in the case that we're trying here this week, right?

Wehmas:     Correct.  I was not.

¶23   The prosecutor asked no further questions on direct, and counsel proceeded with cross examination as follows.

Counsel:     Did you enter Tone into the database or is it something that you had found in the database?

Wehmas:     I personally observed the nickname Tone in the same individual's cell phone.

Counsel:     And how did you learn of this … name for Mr. Sims?

Wehmas:     The person I interviewed knew Anthony Sims from past drug addictions or purchasing of heroin.

Counsel:     So this is what that particular person that you interviewed referred to Mr. Sims as; is that correct?

Wehmas:     The person I interviewed … identified Anthony Sims as his heroin dealer.

¶24   Counsel asked no further questions, and the prosecutor proceeded with redirect examination as follows.

Prosecutor:   Sgt. Wehmas, specifically the person you interviewed had Mr. Sims in his cell phone as Tone, correct?

Wehmas:     Correct.

Prosecutor:   [I]n 2015 did you personally observe … Anthony Sims's [telephone] number stored in this individual's phone as Tone, T-O-N-E?

Wehmas:     Yes, I did.

¶25   Sims does not identify specifically which portions of Wehmas's testimony implicates his confrontation right.  In his appellant's brief, Sims asserts,

"Officer Wehmas testified she knew Mr. Sims to identify as 'Tone'" based on "the statement of an individual during a custodial interrogation." Sims also asserts, "The person who identified Mr. Sims was not Officer Wehmas, it was a suspect she was interrogating. This suspect was not a witness at trial, and Mr. Sims had no opportunity to cross examine him." In the same vein, Sims also asserts that the person whom Wehmas interviewed "claimed to know [Sims] as 'Tone.'"

¶26 However, the testimony quoted above shows that the prosecutor did not elicit any testimony by Wehmas that the person she interviewed identified Sims as Tone. Rather, both on direct and redirect examination, Wehmas testified only that reports she had prepared in 2014 or 2015 identified Sims as Tone, and, more specifically, that she personally observed a telephone number that Wehmas associated with Sims on the phone of the person she interviewed, and that telephone number was stored as "Tone." Wehmas did not testify on direct or redirect examination that the person made any statement to Wehmas about Sims being Tone. It was her prior knowledge of the telephone number that she associated with Sims that provided the link.

¶27 On cross examination, Wehmas testified that she saw the nickname Tone in the phone of the person she interviewed. She did not testify that the person "referred to" Sims as Tone; rather she testified that the person knew Sims from prior drug-related interactions and "identified" Sims as his heroin dealer.[2] Again, Wehmas did not testify on cross examination that the person made any

---

[2] While this is potentially incriminating testimony in itself, Sims does not argue on appeal that Wehmas's testimony on cross examination that the person she interviewed identified Sims as his heroin dealer was inadmissible on any basis other than that it purportedly created a connection between Sims and the nickname Tone.

statement about Sims being Tone. Rather, to repeat, Wehmas testified that she saw a telephone number that she associated with Sims stored as "Tone" on the person's phone.

¶28 In sum, Sims fails to identify any testimony that the person Wehmas interviewed in 2014 or 2015 made a statement that the person knew Sims as Tone. Accordingly, we conclude that the circuit court did not "receive[] into evidence out-of-court statements by someone who does not testify at the trial," *Mattox*, 373 Wis. 2d 122, ¶24, and that Sims's challenges to Wehmas's testimony on confrontation right grounds fail on that basis.

¶29 Although we could end our analysis here, for the sake of completeness and to the extent that some aspect of Wehmas's testimony could constitute unobjected to error, we address the issues raised on appeal regarding any error as follows. We conclude that Sims forfeited his challenge to the testimony and that any error by trial counsel in failing to object to the testimony was not plain error and did not prejudice Sims.

### B. Forfeiture

¶30 "It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727; *State v. Davis*, 199 Wis. 2d 513, 517, 545 N.W.2d 244 (Ct. App. 1996) ("'[U]nobjected-to errors are generally considered waived; and the rule applies to both evidentiary and constitutional errors.'" (quoted source omitted)). This rule of forfeiture is "not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice." *Huebner*, 235 Wis. 2d 486, ¶11. The rule

"promotes both efficiency and fairness, and 'go[es] to the heart of the common law tradition and the adversary system.'" *Id.* (quoted source omitted; alteration in *Huebner*).

¶31    One of the primary objectives of the forfeiture rule is to promote raising an issue through an objection at the circuit court level, which "allows the [circuit] court to correct or avoid the alleged error in the first place, eliminating the need for appeal." *Id.*, ¶12.  This process "gives both parties and the [circuit court] judge notice of the issue and a fair opportunity to address the objection." *Id.*  "The party who raises an issue on appeal bears the burden of showing that the issue was raised before the circuit court." *Id.*, ¶10.

¶32    In failing to preserve at trial the issue of whether his right to confrontation was violated, Sims has not met this burden.  As a result, he has forfeited a review of this issue on appeal.

¶33    Sims argues that the forfeiture rule does not apply to his right to confrontation, because that right is a constitutional right that must be knowingly, intelligently, and voluntarily waived.[3]  However, Sims does not cite any legal authority supporting the proposition that a defendant's confrontation right must be knowingly, intelligently, and voluntarily waived.  Rather, he asserts that the Wisconsin case law that holds that constitutional rights are deemed forfeited unless timely raised in the circuit court contradicts United States Supreme Court precedent.  However he does not support this assertion with a developed argument

---

[3] "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (quoted source omitted).

identifying or explaining which aspect of Wisconsin case law contradicts which aspect of United States Supreme Court precedent. Accordingly, we do not consider this argument further. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that this court may decline to address arguments unsupported by legal authority or insufficiently developed).

### C. No Plain Error

¶34 Sims argues that, even if he did forfeit his challenge to the testimony, he may raise that challenge on appeal because counsel's failure to object constituted plain error.

¶35 In **State v. Jorgensen**, 2008 WI 60, 310 Wis. 2d 138, 754 N.W.2d 77, our supreme court explained:

> The plain error doctrine allows appellate courts to review errors that were otherwise waived by a party's failure to object. Plain error is "'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" The error, however, must be "obvious and substantial." Courts should use the plain error doctrine sparingly.

*Id.*, ¶21 (citations omitted). "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless." *Id.*, ¶23.

¶36 As explained above, it was not obvious that any aspect of Wehmas's actual testimony violated Sims's confrontation right. That any error arising from admission of that testimony was not obvious at trial is reinforced by Sims's failure on appeal to identify with specificity the testimony that he asserts violated his confrontation right. Accordingly, we conclude that Sims fails to show that he is entitled to a new trial based on plain error.

¶37    Sims argues that, "even though the evidence presented could have been sufficient [to] convict … Sims," the asserted error requires a new trial because it "goes to one of the core, fundamental constitutional protections." This argument does not address whether the asserted error was so obvious that it implicated the constitutional protection at issue. Accordingly, it does not disturb our conclusion that the plain error doctrine does not apply here.

### D.    *No Ineffective Assistance of Counsel*

¶38    Sims argues that, if he forfeited his confrontation right challenge or failed to show plain error, he is nevertheless entitled to either a new trial or an evidentiary ***Machner*** hearing based on his claim that his trial counsel was constitutionally ineffective for not objecting to Wehmas's testimony connecting Sims with the nickname Tone. *See **State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (when a defendant claims that the defendant received the ineffective assistance of trial counsel, a postconviction hearing "is a prerequisite … on appeal to preserve the testimony of trial counsel"). We conclude that Sims's claim fails because he does not show that any error prejudiced his defense.

¶39    The United States Constitution guarantees to criminal defendants the right to effective assistance of counsel. ***State v. Balliette***, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334; ***Strickland v. Washington***, 466 U.S. 668, 686 (1984). To demonstrate that counsel's assistance was ineffective, the defendant must establish both "that counsel's performance was deficient and that the deficient performance was prejudicial." ***State v. Breitzman***, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citing ***Strickland***, 466 U.S. at 687). "[T]here is no reason for a court deciding an ineffective assistance claim … to address both

components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see also* *Breitzman*, 378 Wis. 2d 431, ¶37 ("If the defendant fails to satisfy either prong [under *Strickland*], we need not consider the other."). The defendant bears the burden on both of these prongs. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶40 Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. A defendant's burden is to show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

¶41 Counsel's deficient performance prejudiced the defense if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To prove prejudice, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To prove prejudice in an ineffective assistance case, "a defendant must establish that but for [trial counsel's] error, there is a reasonable probability [that] the jury would have had a reasonable doubt as to [the defendant's] guilt." *State v. Sholar*, 2018 WI 53, ¶45, 381 Wis. 2d 560, 912 N.W.2d 89. In other words, to establish prejudice, a defendant need not prove that the outcome "more likely than not" would have been different absent trial counsel's error. *Id.*, ¶44.

¶42 "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact." *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circuit court's findings of fact will not be disturbed

unless those findings are clearly erroneous. *Id.* "'The circumstances of the case and … counsel's conduct and strategy' are considered findings of fact." *Id.* (quoted source omitted). However, whether those facts constitute deficient performance and whether such deficient performance was prejudicial are questions of law that we review independently. *State v. Tulley*, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

¶43 As a preliminary matter, we reject Sims's argument that he is entitled to a new trial without an evidentiary hearing based solely on the allegations in his motion for postconviction relief as contrary to binding Wisconsin case law. He acknowledges that "an evidentiary hearing is a prerequisite to appellate review of ineffective assistance of counsel [claims]," pursuant to this court's decision in *Machner*, 92 Wis. 2d at 804. However, he argues that we need not follow this requirement here because the self-evident prejudice resulting from the error renders "irrelevant" any strategic reason counsel may have had for not objecting. Sims is essentially arguing that we overrule *Machner*, which we cannot do. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (this court is bound by its own precedent).

¶44 To the extent that some aspect of Wehmas's testimony could have implicated Sims's confrontation right, although we conclude above that it did not, we now explain why we conclude that Sims fails to show that any error in failing to object to that testimony prejudiced him. In his appellant's brief, Sims asserts only that prejudice inherently flows from the denial of his right to cross examination. In his reply brief, Sims asserts that prejudice flows from the inference that the State called Wehmas as a witness because her testimony was necessary to support the State's case. These conclusory assertions disregard the evidence at trial showing that Sims was an instigator of and present at the fight

and, which, as noted above, he acknowledges "could have been sufficient [to] convict" him. That evidence includes the following.

¶45 The person who knocked on S.W.'s door and said that his group was looking for S.W. to continue the fight with Hill was with a group of three to six grownups and a gray minivan that was parked outside and later near the fight. That person was not Hill but was an adult who said he was Tone, Hill's cousin. Sims, an adult, is Hill's cousin. Another of Sims's cousins knew Sims as Tony, and an officer other than Wehmas learned that Sims went by the nickname Tone. Sims was present at the fight and present when shooting began. There was shooting at the fight by two men in the group supporting Hill and by one friend of S.W.'s. Sims's account of being shot in Rockford was not supported by any evidence of a shooting in the area he described, his wound was not consistent with how he described the incident, his account of being driven to the hospital was not supported by the hospital's surveillance video, and his showing up at the Rockford hospital was consistent with his having been at the fight in Beloit shortly before.

¶46 In sum, Sims fails to show that a different result was probable had Wehmas's testimony—that she saw on a phone a telephone number that she associated with Sims being identified as Tone—not been presented to the jury. Accordingly, he fails to show the prejudice necessary to support his ineffective assistance of counsel claim.

## II. Constitutional Right to Speedy Trial

¶47 Sims filed a statutory motion for a speedy trial on February 28, 2020, pursuant to Wis. Stat. § 971.10 (2021-22) and the United States and

Wisconsin Constitutions.[4] The circuit court delayed the trial for cause on June 30, 2020 and November 17, 2020. Sims sought modification of his bond on December 1, 2020. Sims's trial began on April 12, 2021. On appeal, Sims argues that the delay violated his constitutional right to a speedy trial. As we explain, we conclude that this issue is not properly before us because Sims did not raise it in the circuit court, either at trial or in his postconviction motion.

¶48 In order to preserve an issue, a party must raise it "with sufficient prominence such that the [circuit] court understands that it is called upon to make a ruling." *Schwittay v. Sheboygan Falls Mut. Ins. Co.*, 2001 WI App 140, ¶16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772.

¶49 Mere lapse of time does not constitute a denial of the right to speedy trial. *Commodore v. State*, 33 Wis. 2d 373, 377, 147 N.W.2d 283 (1967). It is the defendant's affirmative duty to insist upon a speedy trial. *Johnson v. State*, 39 Wis. 2d 415, 417, 159 N.W.2d 48 (1968).

¶50 Additionally, the Rules of Appellate Procedure provide that a defendant in a criminal appeal "*shall* file a motion for postconviction or postdisposition relief before a notice of appeal is filed unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised." WIS. STAT. RULE 809.30(2)(h) (emphasis added); *see also* WIS. STAT. § 974.02(2) (requiring postconviction motions prior to appeal for issues other than sufficiency of the evidence or those previously raised). These provisions advance the policy that "it is better to give the circuit court, which is familiar with the facts and

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

issues, an opportunity to correct any error it has made before requiring an appellate court to expend its resources in review." *State v. Walker*, 2006 WI 82, ¶30, 292 Wis. 2d 326, 716 N.W.2d 498. Furthermore, raising an issue in the circuit court provides the opposing party with an opportunity to provide factual submissions that may refute the claim. *Gruber v. Village of N. Fond du Lac*, 2003 WI App 217, ¶27, 267 Wis. 2d 368, 671 N.W.2d 692. Accordingly, this court will deem forfeited and need not address any issue other than the sufficiency of the evidence that has not been preserved in the circuit court. *State v. Hayes*, 167 Wis. 2d 423, 425-26, 481 N.W.2d 699 (Ct. App. 1992); *State v. Klapps*, 2021 WI App 5, ¶23 n.3, 395 Wis. 2d 743, 954 N.W.2d 38.

¶51 Sims did not raise the constitutional speedy trial issue that he presents on appeal by either pretrial or postconviction motions in the circuit court. Merely making a speedy trial demand is not the same as requesting relief based on an alleged constitutional violation. Sims does not identify any location in the record showing that this issue was presented to or decided by the circuit court. Accordingly, the speedy trial challenge that he makes for the first time on appeal is not properly before us.

## CONCLUSION

¶52 For the reasons stated, we affirm the circuit court's order denying Sims's motion for postconviction relief without an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

19